AUGUST H. MEY *et al.*

*v.*

ELSIE M. GULLIMAN, Admx.

*Filed at Springfield November 21, 1882.*

1. RES JUDICATA—*what so regarded.* Where a bill in chancery calls for answers under oath, which are filed, denying the material allegations of the bill and the equities of complainant, and no replication is filed, but the bill is dismissed, on complainant's motion, without any words in the order showing it is without prejudice, it is a matter of grave doubt whether such an order does not render the matters alleged and denied *res judicata* as between the parties.

2. CHANCERY—*evidence to overcome sworn answer.* Where a sworn answer is required, and filed, denying the material allegations of the bill, it is evidence for the defendant of such force that the complainant can have no decree against him until the same is disproved by evidence equal to that of one witness, and in addition thereto a preponderance of proofs sufficient to have sustained the bill if the oath to the answer had been waived.

3. SAME—*sworn answer as evidence in second suit.* If a complainant, after the coming in of sworn answers, dismisses his bill, and then files another setting up substantially the same grounds for relief as in the former one, but waiving answer under oath, such sworn answers filed in the prior suit will remain evidence, and the complainant can have no decree under his second bill until such sworn answers are overcome by a preponderance of other proofs.

4. WITNESS—*credibility.* The testimony of a party to a bill in chancery directly contradictory of his sworn answer to a former and similar bill seeking the same identical relief, is unworthy of belief.

5. FRAUDULENT CONVEYANCE—*fraud not presumed.* Fraud as against creditors is never to be presumed when the transaction may be fairly reconciled with honesty.

APPEAL from the Circuit Court of Christian county; the Hon. W. R. WELCH, Judge, presiding.

It is conceded by all parties in this case, that Henry Leuders, in 1867, made a contract to purchase of Martha A. Paisley the land in controversy, a quarter of a section, at the price of $1750, and gave to her his three promissory notes,

bearing interest from date, at the rate of ten per cent per annum,—one for $750, payable June 1, 1868, one for $500, due June 1, 1869, and a third for $500, due June 1, 1870, —and took from her a bond for a deed upon the payment of these notes, under which contract he went at once into possession, and continued to live upon the land until March, 1876, when the possession thereof was taken by Mrs. Doratha Hienman, and her husband, Charles Hienman, who occupied the same at the time when this suit was brought, and when the decree in this case was made. When the first payment fell due it was paid. Three hundred dollars of the money used in this payment was borrowed of one Blume, and $100 from Sophia Brinkerhoff, and to secure Blume the title bond was assigned to him. Soon after this, Mey, at the request of Leuders, paid Sophia Brinkerhoff and Blume the money they had loaned, and with the consent of Leuders the bond was assigned by Blume to Mey. When the bond was assigned to Mey, in 1868, he took it as security for moneys paid out by him for Leuders, at his request. In 1869 Mey paid off and discharged the note given for the second payment, and in 1870 Mey paid in full the note given for the last payment, and at that time Mrs. Paisley conveyed the land to Mey by general warranty deed, with the knowledge and consent of Leuders. On August 21, 1871, Henry Leuders gave Mey his note for $500, payable one year from date, with interest at ten per cent, and secured the same by a chattel mortgage upon the personal property on the place.

In 1872 Leuders entered into a written contract with Mey, by which Mey employed Leuders to cultivate the farm for him, and agreed to pay him $300 for six months' work. In this writing the land is called "the farm of August H. Mey." On August 7, 1874, Leuders gave to Mey a note and chattel mortgage, in which he declared himself indebted to Mey in the sum of $1180, and agreed to pay the same, with interest at ten per cent, six months' from that date.

On February 6, 1875, complainant recovered a judgment against Leuders for $1998.20. On February 18, 1875, the personal property named in the chattel mortgage of August 7, 1874, was sold under that mortgage, and Charles Leuders, a son of Henry Leuders, and who lived on this land with his father, became the purchaser, at prices which amounted to $704, and gave his note to Mey for that amount, and secured the same by a chattel mortgage upon the same property. On the 22d of February, 1875, Mey, with the knowledge of Leuders, leased the land to Charles from March 1, 1875, to March 1, 1876, at a rental of $400, (one-half to be paid in October, 1875, and the residue in January, 1876,) and the tenant to pay the taxes for the year 1875. On February 27, 1875, execution was sued out upon complainant's judgment, and the same, on May 15, 1875, was returned *nulla bona*. In March, 1875, Mey gave a mortgage upon this land to George R. Reese, for some $2000, money borrowed from him, and this mortgage was placed on record.

On July 19, 1875, Mrs. Gulliman, the complainant in the cause at bar, filed her creditor's bill in chancery, making defendants thereto Henry Leuders, A. H. Mey, George R. Reese, Charles Leuders, and Johanna Leuders, who is the wife of Henry Leuders, calling for a discovery, under oath, of any and all property interests of Henry Leuders, equitable or otherwise, and asking that the same, when discovered, should be subjected to the payment of her judgment against him, already stated, and charging that all sales and assignments made by Leuders, if any, were fraudulent and void; and especially charging, as to this land, that Henry Leuders had paid the purchase money to Mrs. Paisley, the former owner, with money borrowed for that purpose, and had caused the land to be deeded to August H. Mey, reserving a secret trust in favor of Henry Leuders, or some member of his family, and that Henry Leuders had held possession ever since 1868, enjoying the rents and profits. The bill called for answers

under oath, and a full, detailed history of all the transactions relating to the land and the rent thereof, and of all sales or assignments of personal property made by Henry Leuders, and especially a full history as to the nature and amount of the consideration of the chattel mortgage for $1180, made on August 7, 1874, and the purposes of the same.

To this bill, Mey, on August 23, 1875, filed his sworn answer, in which he says that about the first of October, 1868, Henry Leuders, having borrowed money of Blume, of St. Louis, and assigned to him the Paisley bond for this land, to repay the same borrowed of him (Mey) about $360, and in addition borrowed of him about $420, and these sums were used to pay the first installment of the purchase by Leuders from Paisley, or to repay money which had been borrowed for that purpose by Leuders, and for these advances Leuders agreed to assign the title bond to him, and soon afterwards the bond was so assigned; that in 1869, when the second payment fell due, Leuders had no money, and was unable to make any part of the payment, and thereupon an agreement was made between Leuders and Mey that Mey should and would make the remaining payments on the Paisley bond, and take the land in satisfaction of the whole purchase money thus paid by Mey, and that in pursuance of that agreement Mey did make the second and third payments to Mrs. Paisley, and received from her a deed, in 1870, conveying the land to him absolutely, and that the amount paid for the land by Mey in that way amounted to about $2000; that Henry Leuders rented the premises of him (Mey), and agreed to pay rent therefor; that a part of the rent was to be paid by improvements to be made on the land, in breaking up ground, building fences and a house; that the rent for 1868 and 1869 was to be paid by improvements, and for the years 1870 and 1871 the rent was to be paid in cash, at three dollars per acre; that in 1872 Mey employed Leuders to work the farm for him, by the month, (which contract was in writing,

and was attached to the answer as an exhibit,) and Mey received the crops raised on the farm in the year 1872, and paid Leuders for the cultivation thereof, according to that contract; that for the years 1873 and 1874 Henry Leuders occupied the premises under a lease from Mey, at a rental of three dollars per acre; that the chattel mortgage of August 21, 1871, above mentioned, was given to secure to Mey $500 which Leuders then owed him, on account of Leuder's partial failure to make improvements, for the use of the land, in 1868 and 1869, and for unpaid rents for 1870, and for other items of account then owing to Mey by Leuders; that after that mortgage became due, it was unpaid, and Leuders had, in addition thereto, become indebted to Mey for rent, and for money loaned to him by Mey, and paid out for him, and thereupon Leuders gave his note to Mey, August 7, 1874, for $1180, to be paid at six months, with interest at ten per cent, and to secure the same gave the chattel mortgage of that date; that the property named in that mortgage was of the value of $704, and that this mortgage was given to secure a bona fide indebtedness from Leuders to him; that Leuders still owed him the amount of that $1180, and interest, less the credit of $704 for proceeds of sale of the property.

On the same 23d day of August, 1875, Henry Leuders, Charles Leuders, and Johanna Leuders, each filed a separate sworn answer to that bill. In each of these sworn answers the statements of Mey as to his agreement, in 1869, with Henry Leuders, to make the full payments on the land, and to take the same as his own, and the statements of Mey as to the leasing of the land from time to time by Mey, and the statements of Mey as to the bona fide character of the chattel mortgages, are all and each reiterated under oath, and separately, by Henry Leuders, Charles Leuders, and Johanna Leuders. In addition to this, Henry Leuders, in his sworn answer, in August, 1875, denies that he is, *in any way or manner, beneficially interested in any real estate in this State,*

and denies that he is beneficially interested in any contract
or agreement relating to ·real estate, or the rents, issues or
profits of any real estate, or in any chattels, of any name or
kind, save certain household goods, not exceeding $100 in
value.   In addition to the reiteration of Mey's statements,
Charles, in his sworn answer, says he took possession of
the chattels bought by him at the chattel mortgage sale on  ·
February 18, 1875, for $704, and that he is *the owner thereof*.
These sworn answers were filed at the August term, 1875, of
the circuit court, and during the same term, and on the 4th
day of September, 1875, the complainant, Gulliman, by her
solicitor, came into court, and "upon his motion," as the
record says, *"it was ordered by the court* that this cause be
dismissed, at complainant's costs."

On the 21st day of October, 1875, Mey sold and conveyed,
by warranty deed, the land in question to Mrs. Doratha
Hienman, and her deed was put on record.   At her purchase
Mrs. Hienman paid to Mey $2888, and as a part of the
purchase price agreed to pay Mey's note to Reese, secured
by mortgage upon the land for money borrowed by Mey in
March, 1875, amounting, at the time of her purchase, to
about $2100,—making in all near $5000.   In March, 1876,
soon after the expiration of Mey's lease to Charles Leuders,
Mrs. Hienman, and her husband, Charles Hienman, in some
way not shown by the record, obtained exclusive possession
of the land, and were thus in possession when this suit was
begun and when the decree in this case was rendered, and
pending the suit, Mrs. Hienman, to protect her purchase from
sale under the Reese mortgage, paid off that mortgage.

The suit at bar is a creditor's bill, filed on the 17th day of
July, 1876, against Henry Leuders, Charles Leuders, August
H. Mey, and Doratha Hienman, and her husband, Charles
Hienman, founded upon the same judgment set out in the
bill of 1875, and contains, in substance, the same allegations
presented in the former bill, and seeks the same relief, and

does not differ in substance from the former bill, except in this, that in this bill the oaths of defendants to their answers are waived, and in the statement in this bill of the purchase from Mey by Mrs. Hienman, and the taking possession by her and her husband, and the addition of a charge that she purchased with notice of complainant's rights. Henry Leuders and Charles Leuders suffered this bill to be taken as confessed against them, for want of answers. Mey and the Hienmans answered the bill fully, stating the history of the transactions up to July, 1875, in the same manner, and nearly in the same words, as the same was stated in the sworn answers of Mey, and Henry Leuders, Charles Leuders, and Johanna Leuders, filed to the first bill, as above stated. In addition, the purchase of Mrs. Hienman was stated and charged to have been made for a full consideration, in good faith, and without notice. To this answer a replication was filed.

After this replication was filed, the defendants, by leave of court, filed a plea setting out in full the bill and answers, and final order of court in the.former suit, and insisting upon the same as a bar to this suit. On the same day the cause was brought on for final hearing, as the record states, "and tried upon the bill so taken as confessed against the defendants Henry Leuders and Charles Leuders, and upon the pleadings of the respective parties filed herein, and upon the testimony of witnesses sworn and examined in open court, and documentary and written evidence in behalf of complainant, and also in behalf of defendants Doratha Hienman, and Charles Hienman, and August H. Mey; and the court having heard all the testimony offered, takes the cause under advisement." This was at the August term, 1877. The cause was continued from term to term, until the November term, 1880. At that term a decree settling the relative rights of the parties was entered, finding, among other things, that on the 19th of October, 1868, the title bond of Paisley to Henry Leuders

was assigned by Blume to Mey, under an agreement between Leuders and Mey, and that Mey took the assignment in trust for Leuders, and to secure himself for money already paid by him for Leuders, and for money and property to be thereafter paid and advanced by him to and for the use of Leuders; that in pursuance of this agreement with Leuders, Mey afterwards paid to Martha Paisley certain notes of Leuders, held by her for purchase money, and upon full payment of the said purchase money she, on August 12, 1870, conveyed the land in question to Mey; that Mey, in pursuance of that agreement with Leuders, took that deed and the title to the land in trust for Leuders, and to secure himself the repayment of money advanced by him for and to Leuders; that Mey continued to hold the land so in trust and for security until October 21, 1875, when he conveyed the same to Mrs. Hienman, and that in March, 1876, she took possession under that conveyance, and has since occupied and enjoyed the use thereof; that at the time of her purchase Leuders had full right to redeem, and complainant's judgment was a lien upon that right of redemption; that Mrs. Hienman took the property with full notice of the equities of Leuders, and of the lien thereupon of complainant, and that said deed to Mrs. Hienman was made with intent on the part of her and Mey to hinder and delay complainant in the collection of her judgment. The decree sets aside the deed to Mrs. Hienman as against complainant, but holds it valid to the extent of subrogating Mrs. Hienman to the equities of Mey, to the balance found to be due from Leuders to Mey, upon an account to be taken, to the extent of the consideration paid by her to Mey.

By the decree the cause was referred to the master to ascertain the amount due to Mey from Leuders, and also the amount paid by Mrs. Hienman to Mey. This was done in December, 1880. The master reported to the June term, 1881, that the amount due to Mey from Leuders for moneys

advanced, with interest, was $5537.21, and the amount paid to Mey by Leuders, with interest, was $983.64, leaving a balance due Mey on this account of $4553.57; that the rent of the premises from March 1, 1876, to March 1, 1881, occupied by Mrs. Hienman, with interest, was $2692.80, and deducting for improvements made by her, $936.01, charges Mey in account with Leuders, on this account, with $1756.79, making in all due Mey from Leuders to entitle Leuders to the land, the sum of $4553.57, less $1756.79,—leaving a total of $2796.78. In this account no notice is taken of the amount due to Reese upon his mortgage of March, 1875.

The master also reports that Mrs. Hienman paid to Mey, in cash, on December 25, 1875, on her purchase of October 21, 1875, the sum of $2888, and afterwards paid off the Reese mortgage for $2800. These amounts aggregate $5688, which Mrs. Hienman had paid on the property, so that, to make her whole, charging her with the use of the property, the sum of $3931.21 would have to be paid to her.

After the master's report was approved, leave was given complainant to amend her bill so as to charge Mrs. Hienman with rents of the premises; but the court refused to allow Mrs. Hienman leave to file a cross-bill asking that she be subrogated to the rights of Reese under his mortgage, in discharge of which she had paid $2800.

The decree directs, in default of Leuders' paying to Mrs. Hienman $2796.78, and to complainant the amount of her judgment, that the property shall be sold, and after paying costs out of the proceeds, the master shall pay to Mrs. Hienman, with interest from date, $2796.78, and to complainant her judgment, and interest, and that the balance thereof be paid to Leuders, and on the payment by Leuders of the above sums to Mrs. Hienman and to complainant, then the absolute title to the property shall be conveyed to him. Mey and Mrs. Hienman appeal to this court.

Mr. G. B. CROOKER, Mr. G. M. STEVENS, and Mr. E. LANE, for the appellants:

That the dismissal of a bill, not without prejudice, after the defendants have answered under oath denying the material allegations of the bill, is a bar to a second bill between the same parties concerning the same subject matter, see Story's Eq. Jur. sec. 1523; *Garrick* v. *Chamberlain*, 97 Ill. 639; *Philadelphia Fire Ins. Co.* v. *Central National Bank*, 1 Bradw. 357; *Insurance Co.* v. *Central National Bank*, 7 id. 429; Freeman on Judgments, (2d ed.) sec. 270; *Durant* v. *Essex Co.* 7 Wall. 107; *Thurston* v. *Thurston*, 99 Mass. 39; *Barrowscale* v. *Tuttle*, 5 Allen, 377; *Foote* v. *Gibbs*, 1 Gray, 412; *Ferris* v. *McClure*, 40 Ill. 99; *Smith* v. *Newland*, id. 400.

Fraud is never presumed, but must always be proved by the parties alleging the same.

To constitute a deed absolute in form a mortgage, it must be to secure some indebtedness which is enforcible in law or equity. *Carr* v. *Rising*, 62 Ill. 14; *Price* v. *Karns*, 59 id. 278.

A clear preponderance of evidence is required to show a deed is only a mortgage. *Duren* v. *Blake*, 44 Ill. 39; *Potts* v. *Cable*, id. 103; *Shays* v. *Norton*, 48 id. 101; *Sharp* v. *Smitherman*, 85 id. 154; *Lindner* v. *Cummings*, 57 id. 195.

Mr. J. G. KOESTER, for the appellee:

The dismissal of a bill is a bar to a second suit only when the court determines that the complainant has no title to the relief sought, and therefore a dismissal for want of prosecution is no bar. Cooper's Eq. Pleading, 270; Mitford's Eq. Pleading, (by Tyler,) 330.

If the complainant, after the putting in of defendant's answer, conceives he shall not be able to effectually prosecute his suit, he may apply to the court for leave to dismiss his bill, with costs; and this is a motion of course. 1 Barbour's Ch. Prac. 225, 228; 1 Daniells' Ch. Prac. (4th ed.) 790.

It may be stated as a general rule, that a voluntary dismissal of a bill by the complainant will not prevent the filing of a new bill. It is not pleadable unless it is a dismissal upon the hearing. 1 Barbour's Ch. Prac. 228.

Mr. W. M. PROVINE, also, for the appellee, presented a very exhaustive argument upon the evidence in the case,—and further, insisted the case of *Garrick* v. *Chamberlain*, 97 Ill. 639, cited by appellants' counsel, is an authority directly against the position that the matter of this suit is *res judicata*. The record shows that the former suit was dismissed for want of prosecution, which is no more than a mere non-suit, and therefore concludes nothing against a party or his privy. Herman on Estoppel, sec. 151; Mitford's Pl. 195; 4 Johns. Ch. 300.

Mr. JUSTICE DICKEY delivered the opinion of the Court:

In a suit in chancery, where the bill calls for answers under oath, and where sworn answers have been filed denying the equities of the complainant, and where no replication has been filed, and where, after answers are so filed, it is, on motion of complainant, ordered by the court that the bill be dismissed at the costs of the complainant, and no other words of the order indicate that the bill is to be dismissed without prejudice, it is a very grave question whether such an order can be set up successfully as a complete bar to a subsequent suit by the same complainant, against the same defendants, seeking the same relief, and upon the same alleged equities. The writer of this opinion is inclined to think that such an order, under such circumstances, renders the matters alleged and denied *res judicata* as between the parties, and that defendants can not afterwards be required to litigate the same *de novo*. It is, however, unnecessary, in the view we take of the case, to decide this precise question, and we forbear to do so.

If it be assumed that such an order is to be treated as a non-suit at law, still it is very clear that a complainant, thus

met with sworn answers denying the equity of the bill, can not properly be allowed to get rid of the obstruction thus presented by merely dismissing his bill, even without prejudice, and then filing a new bill waiving the oath of the defendants. In this case, when the sworn answer of defendant Mey was filed, in August, 1875, it became evidence against the complainant in his favor, of such force that complainant could have no decree against him until the same was proven false by evidence equal to that of one witness, and in addition thereto a preponderance of proofs sufficient to sustain the bill if the oath to the answer had been waived. If it be conceded that complainant may file another bill, and litigate the matters upon their merits, this sworn answer remains proof on record against her, and she can have no decree until this is overcome by a preponderance of other proofs.

The parties agree in saying that the Paisley title bond was at first taken by Mey as the property of Henry Leuders, assigned to Mey as security to him for the repayment of moneys before that advanced by him to and for Leuders, in the making of the first payment under the bond. Mey claims that when the second payment fell due, in 1869, Henry Leuders, being unable to pay the same, abandoned the purchase, and made an agreement with Mey, in substance, that Mey should accept the equitable interest of Henry Leuders in satisfaction of past advances, and would make the second and third payments to Paisley, and take a deed for the land as absolute owner, and that Henry Leuders should retain the possession for two years as tenant to Mey, and that certain improvements made and to be made on the place by Henry Leuders should pay for the use of the place by Leuders for the two years, 1868 and 1869. Complainant denies that this agreement was made. This is the hinge of the case, and on this the merits of the case depend.

On that question Mey has proofs, as follows: His own sworn answer, and in corroboration thereof the fact that on

August 21, 1871, Henry Leuders gave his note to Mey for $500, and secured the same by a chattel mortgage; and the fact that in 1872 a written contract was made between Henry Leuders and Mey, in which the land is mentioned as "the farm of August H. Mey," and by which Leuders agrees, for a fixed compensation, to cultivate it for Mey; and the fact that in August, 1874, Henry Leuders gave to Mey his note for $1180, to be paid in six months, and secured the same by a chattel mortgage; and the fact that in February, 1875, this last note not being paid, the property was sold, under the mortgage, to Charles Leuders for its full value, and the father having failed to pay the rent, and having no instrumentalities to farm with, the land was leased to Charles, who was living with his father on the farm; and the fact that when this lease expired the possession was given to Mrs. Hienman, to whom Mey had sold the land.

The only evidence tending to contradict this statement of Mey as to his having taken the property as his own, in 1869, is the testimony of Henry Leuders, Charles Leuders, and Johanna Leuders, directly contradicting the statements of their sworn answers, and the testimony of Henry Leuders, Jr., a son of Henry Leuders, saying that in July or August, 1875, (which was very shortly before the sworn answers of Mey and his wife, and his son Charles, were filed,) Mey told Charles Leuders and the witness that he had the title for security, and if they worked well they could pay the loan debt. The testimony of Henry Leuders, the father, and that of Charles and Johanna Leuders, being directly contradictory of their sworn answers, is utterly unworthy of belief. The testimony of Henry Leuders, Jr., is directly contradicted by the testimony of Mey, who swears positively that he made no such statement.

The weight of the evidence shows satisfactorily that, in 1869, the agreement set up by Mey was actually made by Mey and Henry Leuders, and from that day forward Henry

Leuders had no real right, equitable or otherwise, to the land, save while he occupied as a tenant of Mey, and his rights then were merely those of a tenant.

We think, from the evidence in the case, that it is probable Mey was a friend of Leuders, and was willing and endeavored to befriend him and his family, and that he may have said. to the sons that he was willing to turn over the property to them on payment to him of what he had paid out for the same, and of what their father owed him. There is no charge in the bill of any intention to defraud, or hinder, or delay any creditor of Henry Leuders, except the complainant. There is no proof or allegation in the bill that the debt on which complainant's judgment was rendered had any existence until in February, 1875. Before that time, in 1871, Henry Leuders was in debt to Mey, and gave his note and chattel mortgage to him for $500, and in 1872 he entered into a written contract to cultivate the farm for Mey, in which he speaks of the farm as "the farm of Mey." In 1874, before complainant's debt is shown to have been in existence, Henry Leuders took up his $500 note, given in 1871, and having become further indebted to Mey, gave him his note and a chattel mortgage for $1180, to be paid in six months. In March, 1875, when, according to the testimony of Mey, which is uncontradicted, Mey had no knowledge of complainant's judgment, having found that his forbearance with Henry Leuders, the father, failed to produce good results, and having sold out the stock and farming utensils under the last mortgage, to Charles, leased the land to Charles for a year. Fraud is never to be presumed when transactions may be fairly reconciled with honesty, and if the weight of the evidence is in favor of that conclusion, it should always be adopted.

In view of the whole record, the judgment of this court is that the decree be reversed and the bill dismissed.

*Decree reversed.*