SCHULMEISTER *v.* TOWNSHIP OF BLENDON.

HIGHWAYS—LAYING OUT—VALIDITY OF PROCEEDINGS—RES JUDI-
CATA.

    Complainant filed a bill against a township and its highway
    commissioner to enjoin the opening of a highway across his
    land. Defendants answered under oath (answer under oath
    not having been waived by the bill), setting up the proceed-
    ings to lay out the highway, and asserting their validity.
    Replication was filed, but not within the time required by
    the rule; and the cause was heard on bill and answer, and a
    decree entered dismissing the bill. *Held, res judicata* as to
    the legality of the highway proceedings in a subsequent suit
    for the same relief, brought against the same parties and
    some adjacent landowners.

Appeal from Ottawa; Padgham, J. Submitted Janu-
ary 10, 1901. Decided May 7, 1901.

Bill by Frederick Schulmeister against the township of
Blendon, Enne Kraai, highway commissioner of said
township, Robert Witters, and Ernest Eckleberg, to en-
join the opening of a highway. From a decree dismissing
the bill, complainant appeals. Affirmed.

*Crane, Norris & Drew,* for complainant.

*Smedley & Corwin,* for defendants.

MOORE, J. This is an injunction bill, filed to prevent
the opening of a new road and the removal of complain-
ant's fences, and to compel the restoration of an old road
and the restoration of fences. The bill was dismissed in
the lower court. The case is brought here by appeal. In
the court below two maps were introduced in evidence,
one of which is shown by the great weight of evidence to
be incorrect. The other one was shown by the great
weight of evidence to be correct. A copy of it will be
found on the opposite page. A reference to it will aid
in understanding the situation.

The complainant moved upon the 40 acres of land where his house now is in 1874. No one else lived near there at that time. In that year proceedings were taken to lay out a highway on the section line between sections 11 and 14, but the proceedings were defective. To reach his house, the complainant came in from the east over a route corresponding to the old wagon road on the map. For some years this road was traveled no farther than to the house and barn of complainant. Later it was opened to the quarter stake, and still later still farther west. In 1889 complainant purchased the east 40 acres of Mr. Nibbelink. The east portion of the fence on the north line of this 40 was two rods south of the section line, but as it went west it crooked about, first

north and then south. As the country became more settled, and it was desired to get the fences on the right line, it was claimed complainant's fences were too far to the north. There never has been any dispute about the location of the government stake at the corner of sections 11, 12, 13, and 14; but there is a dispute about the location of the quarter post one-half mile west of there. A survey of this line was made by Mr. Foster in 1883 or 1884, and it is claimed he fixed the quarter post two rods north of where it is shown on the plat. That claim is disputed. We think it proper to say that, whatever was done by Mr. Foster, it is shown by the great weight of testimony that the quarter post as established by the original government survey is where it is shown to be on the map.

In 1891 the county surveyor, at the request of the highway commissioner, surveyed the line between these sections. Notice was served upon the complainant to remove his fences. He did not do so, and the highway commissioner removed them. The complainant then sued him in an action of trespass. Pending this litigation it is claimed the town authorities and complainant got together, and agreed a new survey should be made, and that all parties should be bound thereby. The town board adopted a resolution to that effect, but it was not signed by Schulmeister, though he was present at the meeting, and assented thereto. A survey was made showing the situation to be substantially as shown upon the map. Schulmeister was not satisfied with this survey, but wanted two sections surveyed. This was done. The complainant still refused to be bound by it, and the trespass suit was brought on for trial. The commissioner sought to defend by showing that a highway had been laid out in 1874. The complainant's attorney claimed the proceedings were defective; that the fences had been erected 20 years, and were not an encroachment; and that the only way the township could get possession of the land would be to lay out the road, condemn the land of complainant,

and pay him for it. The court held the proceedings of 1874 were defective, and charged the jury to find a verdict in favor of the complainant, which was done.

In 1894 proceedings were taken to lay out a highway on the section line, and a highway was laid out. Mr. Schulmeister refused to remove his fences, and the highway commissioner sued him in trespass. The defendant gave notice under his plea as follows:

"And, further, the defendant denies the existence of such highway as claimed in said plaintiff's declaration, and says that there is not, and never has been, a highway over or upon the premises upon which the alleged encroachment as set forth in said declaration exists. And this defendant further denies the location of the section line mentioned in said declaration as the center of the highway, as no highway has been used or laid out as alleged in said declaration. And this defendant denies wholly the encroachment as mentioned in said declaration, and denies the existence of a legally laid out highway, as in said declaration alleged and set forth, but says that all the land and premises covered by said alleged encroachments are the lands, close, and tenements of this defendant; that he has a right and title thereto; and that it was not, and never has been, any part of any public highway, as set forth in said declaration."

The case came on for trial, and, because of defective proceedings in laying out the highway, the plaintiff submitted to a nonsuit.

Proceedings were again commenced to lay out the highway, and an attorney was employed by the highway commissioner to assist in conducting the proceedings. The highway was laid out, awarding to the adjacent landowners one and two dollars each as damages, except the complainant, who was awarded fifty dollars damages. This amount was tendered him, but he refused to accept it. It is conceded that, had there been no highway on this section line, the proceedings would be regular but it is now said that, though the proceedings of 1874 were so irregular as to be invalid, because of continuous use there was in fact a highway on the section line, and that

a new highway could not be laid out until that highway was vacated. No appeal was taken from the action of the highway commissioner in laying out this highway.

The commissioner then notified all the adjacent owners to remove their fences. They all did so except the complainant. The commissioner then removed his fences, and complainant put them back. The commissioner again removed them, and then the complainant sued him in an action of trespass, and also commenced a chancery case, of which we will speak more in detail later, and obtained an injunction. This injunction was dissolved. The road on the line marked as the new wagon road was turnpiked, brushed, and a new bridge built, and has been in uninterrupted use ever since.

The bill of complaint was filed in this case the last of October, 1898. The record and briefs of counsel are long, and many questions are discussed. There are several reasons why this bill was properly dismissed, but we shall refer to but one of them. In August, 1896, the complainant commenced a suit in chancery making Mr. Pa_ody, commissioner of highways of the township of Blendon, and the township of Blendon, defendants. In it he recited his version of all that had been done in relation to the establishment of this highway, including the proceedings of 1895, and, among other things, stated:

"That it is claimed by said alleged highway commissioner and by the township board of said township that the highway was legally laid out during the latter part of the year 1895, the center line of such highway being the section line which is the northern boundary of the premises of your orator; that such highway as laid out is not upon the line of the old highway, but south of the same; and that the said highway as claimed to be laid out by the township authorities in the latter part of the year 1895, and for which it is alleged your orator was awarded the sum of $50 in damages, includes at least two acres of your orator's said land in possession of your orator as aforesaid, and also a part of the apple orchard of your orator as aforesaid; and that the said land of your orator so pretended to be a part of said highway so laid out was south

of the old highway so opened, worked, and accepted for more than 20 years; that it is claimed by said alleged commissioner of said township that said old highway so worked, laid out, and accepted is not the real highway, but that they did, in the latter part of the year 1895, lay out a new highway over the premises of your orator, as aforesaid; * * * that the highway commissioner of said township has sought to lay out this highway, the center line of which should be the section line bounding your orator's said premises upon the north side; that he has wrongfully and oppressively claimed that the section line of said township was about two rods south of the said real section line; that your orator cut and removed the timber from most of the said highway next to where said section line actually was 23 years ago, and says that the said section line as established by the government was along the center of said old highway; that the said pretended new highway, the center of which is claimed to be upon the said section line, runs over the premises of your orator, but that the south bounds of said highway, if measured from said section line as to the center thereof, would not take any land of your orator except that originally dedicated and used as a highway; but that it is falsely and fraudulently pretended that said section line lies nearly two rods south of the real section line, and includes nearly two acres of your orator's land, as before stated. And your orator further says that if the said Lincoln Parody, acting as commissioner of highways or otherwise, is not enjoined by the order of this court, that he will at once enter upon the premises of your orator, cut down trees, ditch the same, and convert the same into a highway graded and ditched."

The bill did not waive an answer under oath, but asked —

"The aid of this honorable court in the premises that the said defendant Lincoln Parody, highway commissioner of said township of Blendon, and the said township of Blendon, may answer this, your orator's bill, and may show, if they can, why your orator should not have the relief herein prayed; and that the said Lincoln Parody, his attorneys, agents, and counselors and employés, may be enjoined by this honorable court from further proceeding to take the lands of your orator, and from working, grading, or ditching the same, and from cutting or remov-

ing trees, and from in any wise interfering with the said lands of your orator until the further order of this court."

The defendants, on the 10th of September, 1896, answered under oath, setting up in detail the proceedings of 1895, and averred:

"That said highway was legally laid out, and all the steps to lay out said highway were regular and legal, and that the order determining and laying out said highway and awarding the damages aforesaid was made on the 21st day of October, 1895."

Attached to the answer, and made a part of it, were copies of all the proceedings from the filing of the petition to lay out the highway to the service of the notice to the complainant to remove his fences.

Afterwards the following decree was made:

"STATE OF MICHIGAN.

"The Circuit Court for the County of Ottawa, in Chancery.

"At a session of said court held at the court-house in the city of Grand Haven, in said county, on the 20th day of January, A. D. 1897.

"Present, Hon. Philip Padgham, Circuit Judge.

"Frederick Schulmeister,
         *Complainant,*
         vs.
Township of Blendon and Lincoln Parody, Highway Commissioner of the Township of Blendon,
         *Defendants.*

"This cause came on to be heard on bill and answer; and it is hereby ordered, adjudged, and decreed that said bill be dismissed, with costs, to be taxed, and that said defendants have execution thereof.

                    "PHILIP PADGHAM,
                         "Circuit Judge."

When the present bill was filed, Mr. Witters and Mr. Eckleberg were made parties thereto, and, in addition to what was set up in the former bill, it was alleged that they conspired with the highway commissioner to deprive the complainant of his land, and prayed:

"That the highway as laid out and established in 1874 upon said section line, and used for 20 years, be decreed to be the true and lawful highway, and that your orator's fences, as the same were originally built and existed for more than 20 years, be decreed to be the boundary line between your orator's premises and said highway."

It also prayed that Witters and Eckleberg might be compelled to move back their fences, and for an injunction, and for damages.

To this bill defendants answered fully, and, among other things, they set up in their answer the proceedings in the former chancery case, and claimed they were *res adjudicata.*

It is now said by complainant:

"The former chancery cause stood for hearing upon bill, answer, and replication; and, when a replication appears on file, the law will presume that it was filed properly and in due season, unless the contrary be affirmatively shown,"—citing *Lyon* v. *Tallmadge,* 14 Johns. 501.

The trouble with this case, as applied to the one at bar, is that the record in this case shows the replication was not filed in due season. The answer was filed September 10, 1896, and the replication was not filed until 62 days later. Evidently it was treated as filed too late. There is nothing to indicate it was claimed on the hearing the replication was filed in time, and that the parties were entitled to put in proofs. The case was, in fact, heard in open court upon bill and answer, and a decree entered therein, from which decree no appeal was ever taken.

Counsel say a decree dismissing a bill for want of prosecution is not a decree after hearing upon the merits, and is no bar to another bill; citing a number of cases. An examination of the cases cited shows the bill was dismissed in the several cases without a hearing. In one of the cases cited — *Loudenback* v. *Collins,* 4 Ohio St. 251 — the learned judge was careful to say:

"I should, perhaps, add, to avoid misapprehension, that, where it appears that the dismissal was upon a hear-

ing of the case, it is to be inferred that it was upon the merits."

Counsel say the prior bill nowhere alleges the invalidity of the 1895 proceedings, and contains no allegation of the use of public power for private interests, and that Witters and Eckleberg were not made parties. We have already quoted enough from the former bill to show that the right to open this highway by reason of the proceedings of 1895, or for any other reason, was denied in the former bill. The sworn answer sets up all these proceedings, and insists that the road in controversy was legally laid out. In *Huyck* v. *Bailey*, 100 Mich. 225 (58 N. W. 1002), Justice MONTGOMERY, speaking for the court, said:

"The complainant alleges that the statements of this answer by way of avoidance * * * were not directly responsive to the allegations in the bill, and that as to these matters the answer is not evidence for the defendant. The cases cited to support this contention are cases where an issue was joined upon the answer, and testimony taken. * * * But, where the case proceeds to hearing on bill and answer alone, the answer must be taken as true in all points. See *Ruhlig* v. *Wiegert*, 49 Mich. 399, 400 (13 N. W. 791), in which case the authorities are collated. See, also, *Perkins* v. *Nichols*, 11 Allen, 542, 544."

The case of *Borrowscale* v. *Tuttle*, 5 Allen, 377, is in point. Answer under oath was not waived, and an answer under oath was put in. The complainant, without the knowledge of defendant, dismissed the bill. The court said:

"The complainant had searched the conscience of the defendant by his bill, and had obtained the discovery which he sought and to which he was entitled. The answer on oath was competent evidence in the cause. The time had passed within which, by the rules of court, the complainant had a right to file a replication and take testimony. As the suit stood, the defendant was entitled to have it heard upon bill and answer. It would have been highly inequitable to allow the complainant, without cause shown and without notice to the adverse party, to

become nonsuit, and so be at liberty to sue again, when he might waive the oath, and deprive defendant of the benefit of his answer,"—and held the decree was *res adjudicata.*

See, also, *Foote* v. *Gibbs*, 1 Gray, 412; *Mey* v. *Gulliman*, 105 Ill. 272.

The prior case, then, having been heard in open court upon bill and sworn answer, in which the proceedings of 1895 to lay out this highway were set up, and where their legality was averred, it must be said the case was heard upon the merits, and is *res adjudicata.*

Decree is affirmed, with costs.

MONTGOMERY, C. J., LONG and GRANT, JJ., concurred. HOOKER, J., did not sit.