## THE HOME NATIONAL BANK OF CHICAGO

*v.*

### SANCHEZ & HAYA.

*Filed at Ottawa January 21, 1890.*

1. INSOLVENT DEBTORS—*preference among creditors—taking security, etc.* Section 13 of the act relating to voluntary assignments, which prohibits the giving of any preferences between creditors, being a remedial statute, and equitable in its nature, should receive a liberal construction to effectuate the purpose of its enactment.

2. Before a debtor has determined to surrender the dominion and control of his property by way of general assignment for the benefit of creditors, he may, in good faith, sell or mortgage any part thereof, or give warrants of attorney for the confession of judgments, and the transaction will be valid. But after he has determined to make a general assignment, he may not, for the purpose of giving one or more of his creditors a priority or preference, do any act having that result. To allow this, would be to permit a fraudulent evasion of the statute.

3. The creditor, if he does not know his debtor has determined to make an assignment, may take from him a mortgage, or other security for his debt, in good faith, and enforce the same, and the subsequent assignment by his debtor will not affect such security. The law gives a creditor the advantage he may secure by his superior diligence, when he is guilty of no fraud or unlawful confederation or collusion to evade the provisions of the statute.

4. Where the creditor, on the maturity of a debt, demanded payment, and on being informed by the debtor of his inability to pay, took prompt steps to have judgments entered upon his notes, under warrants of attorney, without being influenced to such action by any request of the debtor, and procured judgments and a levy thereunder on the same day his debtor made a general assignment, but before such assignment, and there was no collusion between the parties to give any preference after the debtor had concluded to make the assignment, and the assignment was not delayed in the interest of the creditor or at his request, it was *held*, that such creditor was entitled to the preference acquired under his judgments.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the County Court of Cook county; the Hon. RICHARD PRENDERGAST, Judge, presiding.

Prior to October 18, 1887, Allen & Co. had borrowed various sums of money of appellant, giving as security their judgment notes, the last one of which fell due on that day. When these notes were given, Allen & Co. had no thought of making an assignment. On October 19 the cashier wrote to the firm, notifying them that their notes were due, and asking payment. On the next morning Allen called, saying to the cashier that he had come to see about the notes that were overdue. The cashier called his attention to the fact that there were other notes at the bank which he had not met, and Allen replied, they were not paid because of want of funds, and said: "In looking over our situation, I am satisfied that we shall be compelled to make an assignment. We shall not be able to meet the paper that is maturing." To this the cashier replied, "I am sorry that is so," and after a moment's thought continued: "I was thinking how we might, perhaps, help you out, but I don't just see the way. I will talk with Judge Smith, and see if there is any way we can tide you over this matter, and we will let you know." Allen replied, "If not, we will be compelled to make an assignment, and you probably better enter up your judgment notes." Judge Smith, who was one of the officers of the bank, decided that judgment ought to be taken at once, and immediately began the preparation of papers for that purpose. The cashier then saw Allen, and told him they did not see any way they could help the firm out. Allen replied, "I suppose you will have to take judgment," to which the cashier said, "Yes, we shall do so." Two judgments were entered up upon the notes, in the Superior Court of Cook county. On the same day, October 20, 1887, executions were issued thereon, and levied on the stock of goods of Allen & Co. Later in the day Allen & Co. made and filed their assignment for the benefit of creditors.

On the application of the assignee, the county court directed the sheriff to surrender the goods to the assignee, who thereupon sold the same, and was about to pay off the executions,

under the order of the county court, when appellees filed their petition in that court, asking that the judgments of the bank be declared preferential, and the priority of the bank taken away, that the order in its favor be vacated and set aside, and the money distributed *pro rata*, under the statute. At the hearing of the petition the court entered its order in accordance with the prayer of the petition, and from which the bank appealed to the Appellate Court, where the order of the county court was affirmed. The bank, by its further appeal, brings the case here.

Mr. C. D. F. SMITH, for the appellant:

The county court has no jurisdiction to set aside the liens of judgments and levies upon property obtained before the assignment. *People* v. *Gray,* 72 Ill. 343.

In every case in which the court has had occasion to assert the jurisdiction of the county court, the property was in the hands of the assignee. *Freydendall* v. *Baldwin,* 103 Ill. 325; *Hanchett* v. *Waterbury,* 115 id. 220; *Preston* v. *Spaulding,* 120 id. 208.

Messrs. EDGAR B. & WARREN W. TOLMAN, for the appellees:

A confession of judgment procured to be entered by an insolvent upon the eve of an assignment, with an intent to prefer, is an attempt to avoid, indirectly, the statute forbidding preferences, and will be set aside as preferential and void. *Preston* v. *Spaulding,* 120 Ill. 208.

Where the assignee of an insolvent estate, appointed by virtue of a deed of assignment duly recorded in the county court, obtains possession of the *corpus* of the estate, the county court becomes vested with full legal and equitable jurisdiction over so much of such estate as is in the possession of said assignee, and may set aside prior judgments. *Freydendall* v. *Baldwin,* 103 Ill. 325; *Hanchett* v. *Waterbury,* 115 id. 220;

*Field* v. *Ridgely*, 116 id. 424; *Farwell* v. *Crandall*, 120 id. 70; *Preston* v. *Spaulding*, id. 208.

The Voluntary Assignment act is remedial, and must be liberally construed. *Preston* v. *Spaulding*, 120 Ill. 208.

The giving of a judgment note confers no lien, no preference, no security; it only confers the possibility of obtaining one of each of these, if the creditor exercises due diligence. *Clark* v. *Iselin*, 21 Wall. 360.

All secret liens are obnoxious to the law and void, as to creditors. *Clark* v. *Iselin*, 21 Wall. 360; Rev. Stat. chap. 95, sec. 1.

The Supreme Court will not pass upon or consider points which were not raised in either the trial or the Appellate Court. *Bowden* v. *Bowden*, 75 Ill. 111; *Papin* v. *Goodrich*, 103 id. 86; *Morgan* v. *Corlies*, 81 id. 72.

Mr. CHIEF JUSTICE SHOPE delivered the opinion of the Court:

Prior to the act of 1887, relating to voluntary assignments, an insolvent or failing debtor had the right to make an assignment of his property, giving preference to such of his creditors as he saw proper; but section 13 of that act declares that every provision in any assignment thereafter made in this State, providing for the payment of one debt or liability in preference to another, shall be void, and that all debts and liabilities within the provisions of the assignment shall be paid *pro rata*, from the assets of the debtor. This provision was undoubtedly intended to change the rule of law, and to deprive the debtor of the right, by general assignment, to give preferences as between his creditors. The statute sought to correct the evils growing out of the rule, by which, theretofore, assignments for the benefit of creditors, with preferences to favorite creditors, were allowed and sustained. The statute being remedial, and equitable in its nature, giving an equality of right to creditors, should receive a liberal construction to effectuate the purpose

of its enactment. While the statute, in terms, prohibits preferences in the deed of assignment, it is evident, that if the debtor, in contemplation of making an assignment, under the statute, may, by a separate writing, give a portion of his creditors a lien on his property to be assigned, and thereby give them a preference, the purpose and object of the statute would be defeated and the statute rendered inoperative. Therefore, the courts have generally held, in construing similar statutes, that where a debtor, after having entered upon a course of conduct looking to the disposition of all his estate to and for the benefit of creditors, and has determined to adopt an assignment as one of the means to that end, confesses a judgment in favor of one creditor, or gives him a judgment note for the express purpose of enabling the creditor to acquire a prior lien, or transfers his property to the creditor, or gives liens thereon, such acts will be treated as part of the assignment, and the assignment, when executed, will draw to it all such preferential payments and securities, and they will be treated as within the assignment, and held to be void, as giving unlawful preferences. In other words, it has been held that the debtor can not do indirectly what he may not do directly; otherwise, as before said, the statute would be rendered nugatory, and too frequently the meritorious and *bona fide* creditors would be compelled to submit to a distribution of the estate after favored creditors had exhausted most of its assets.

Before the debtor has made up his mind to surrender the dominion and control of his property by way of general assignment for the benefit of his creditors, he may, in good faith, sell or mortgage any part thereof, confess judgments, and execute warrants of attorney to confess the same, and the transactions will be valid. He may lawfully borrow money, or buy property and secure the price thereof, or secure pre-existing debts; but when he finds himself insolvent, and has determined to make a general assignment, he may not, for the purpose of giving one or more of his creditors a priority or

preference over the others, do any act whereby such preference is given. (*Preston* v. *Spaulding*, 120 Ill. 208.) To allow this would be to permit a fraudulent evasion of the statute. It is to be observed, as distinctly held in the case last cited, the statute is not intended to regulate the act of the creditor. He may, notwithstanding the statute, if he does not know that his debtor contemplates making an assignment, take a mortgage, power of attorney to confess judgments, or other security for his debt, in good faith, and enforce the same. And if he procures a preference over the assignment by his own diligence, and without collusion with the debtor, the subsequent assignment will not affect his security. The law gives a creditor the advantage he may secure by his superior diligence, where he is guilty of no fraud, or of unlawful confederation or collusion to evade the provisions of the statute.

In this case, the judgment notes were all executed and delivered long before the debtors had in contemplation the making of an assignment, and were valid securities in the hands of the bank. It required, as said in *Hanford* v. *First Nat. Bank*, 126 Ill. 584, something more to render them effective as security or available to create priority of lien,—judgment should be entered thereon; and it was there held, that although the bank held valid judgment notes, collusion between it and the debtor, by which the assignment was delayed and the bank enabled to take its judgments and have execution issued and levied before the assignment was filed, was a preference obtained by the act of the debtor after he had entered upon the disposition of his estate by voluntary assignment, and that the preference thus obtained was void. In this case, as before said, appellant held valid and *bona fide* judgment notes, and the question presented is, did the bank obtain its priority by collusion with the debtor. If it did, the *Hanford case* is directly in point, and the preferences should be held void. If, however, the priority was gained by the diligence of the bank, and without any unlawful collusion with the debtor, the trans-

action will fall within the rule announced in the *Geohegan case,* 125 Ill. 68.

When the last note matured, the appellant bank took the initiative by demanding payment, and requesting the debtors to call and pay their indebtedness. Allen, one of the debtors, called the next day, and informed the cashier of the inability of his firm to pay the notes, and stated, in substance, that without they could get assistance they would have to make an assignment. The cashier to whom these statements were made proposed consulting other bank officers to see if some arrangement might not be made to tide the debtor firm over their difficulty. Immediately thereafter it was determined that nothing could be done to aid the debtor firm, and the bank took prompt measures to obtain judgments on its notes, and to issue executions thereon, and to levy the same, but, as we think, it clearly appears made no arrangement or agreement with the debtors. Nor had the officers of the bank any understanding with the debtors for delay in the making or filing of their intended assignment. The judgments were not taken or procured at the request of the debtors, nor was the assignment delayed by any understanding or agreement on behalf of the bank, so as to enable it to get priority by the entry of its judgments. It is true that Allen said, when informed that the bank could not carry his firm paper longer, that the bank would then have to take judgment. It is to be observed that the bank, prior to this, had determined to reduce the notes to judgment, and had taken the necessary steps to that end by the preparation of the necessary papers. It can not be said that the bank was put in motion to secure its debt by the debtors, or that it did or said anything whatever to induce the debtors to delay filing their assignment for its benefit.

The fact that Allen & Co. informed the bank of their insolvency will not render the subsequent steps taken by the bank to secure its debt fraudulent, if they were not taken at the instance of the debtors, and there was no collusion, by and

through which the bank was enabled to obtain the judgments, prior to the filing of the assignment. The mere fact of such notice would not deprive the bank of its legal remedy already acquired in good faith and without fraud. In the *Hanford case, supra,* and in *Preston* v. *Spaulding, supra,* as before said, we held, that notwithstanding the Assignment act, a debtor, though insolvent, may still secure, by mortgage, confession of judgment or otherwise, a *bona fide* indebtedness, if done in good faith, and not in contemplation of an assignment. In the *Hanford case,* the debtors, when they gave their judgment note to the bank, although long before any contemplated assignment, agreed that in case of financial trouble they would give the bank notice thereof, and, in pursuance of such agreement, and for the express purpose of preferring the bank, they delayed filing their assignment until the bank had obtained judgment, execution and levy; and in that case we were of opinion that there was such collusion between the creditor and debtor, by which, and, as it would seem, with the consent of the assignee, an unauthorized and fraudulent preference was obtained by the creditor.

It not unfrequently happens, that in cases which are close upon the facts, principles controlling become difficult of application; but we can see no difficulty in the application of the law in cases of this sort. Whatever preference appellant bank obtained was upon its own volition, without any agreement with or collusion of the debtors. Nor does it appear that the priority of appellant was obtained through any affirmative act of the debtors after they had determined to yield dominion of their estate by making a general assignment, and the same was not, therefore, preferential, or void under the general Assignment law.

For the reasons given, the judgments of the Appellate and county courts are reversed, and the cause is remanded to the county court for further proceedings in conformity with this opinion.                                      *Judgment reversed.*