JACOB GENESER, IMPLEADED, ETC.,

V.

CARL TELGMAN ET AL.

*Insolvency—Judgments by Confession—Fraud—Assignment—Preference—Evidence.*

1. Fraud may be found to exist against the positive testimony of those who alone have positive knowledge of what, in a given case, was done; but not only must there be some evidence of fraudulent practice by the party to be charged therewith, but the fraud, being charged, the evidence to sustain the allegation must preponderate.

2. Where a creditor has in his possession valid judgment notes, made before the debtor contemplated making an assignment, if judgment is entered thereon, and priority thereby obtained without unlawful collusion with the debtor, such judgment will not be set aside.

3. The fact that the holder of a judgment note offers to assist the maker, by purchasing at a discount a claim held against the latter by a third person, does not go to show that the judgment was entered on such note in pursuance of an arrangement for its maker to make an assignment.

4. Upon a bill filed, alleging that several judgments by confession were entered in contemplation of an assignment, and were a part thereof, with-

Geneser v. Telgman.

out consideration, and fraudulent as to complainants, this court holds that the note involved was *bona fide* taken in the usual course of business when no assignment was contemplated; that judgment thereon was entered without collusion or arrangement with the maker in such diligent protection of his own interests as its holder had right to insist upon.

[Opinion filed December 11, 1890.]

Appeal from the Superior Court of Cook County; the Hon. Egbert Jamieson, Judge, presiding.

Messrs. Hofheimer & Zeisler, for appellant.

The law applicable to the facts of our case is so clear as not to require an extended argument.

The preference to Geneser is sought to be set aside as a fraud upon creditors. Our Supreme Court in Schroeder v. Walsh, 120 Ill. 403, adopt the following language from Bump on Fraudulent Conveyances, with reference to the character of proof required to make out such a charge:

"The proof, however, must be satisfactory. It must be so strong and cogent as to satisfy a man of sound judgment of the truth of the allegation. It need not possess such a degree of force as to be irresistible, but there must be evidence of tangible facts, from which a legitimate inference of a fraudulent intent may be drawn. * * * As an allegation of fraud is against the presumption of honesty, it requires stronger proof than if no such presumption existed."

And the court further say in the same case: "This court has frequently held that the evidence must be clear and satisfactory to establish fraud against creditors in a transaction. Pratt v. Pratt, 96 Ill. 184; Bowden v. Bowden, 75 Ill. 143; Blow v. Gage, 44 Ill. 208. In Bonnell v. Wilder, this court says: 'It is a well established rule in all courts, that a party who makes an affirmative allegation, must maintain it by proof. His proof must be superior to that offered by his adversary. Watt v. Kirby, 15 Ill. 200; Un. Nat. Bk. v. Baldenwick, 45 Ill. 375. When a party affirms the existence of a material fact he must prove it; the negative will be presumed; and when the proof is equally balanced, or the jury are

unable to determine that it preponderates in favor of the affirmative, the presumption of the negative is not overcome. This equilibrium may be destroyed by the surrounding circumstances.'"

And the following instruction was in the same case held unobjectionable (p. 410):

"Fraud is never to be presumed, but must be affirmatively proved by the party alleging the same. The law presumes that all men are fair and honest, that their dealings are in good faith, and without intention to disturb, cheat, hinder, delay or defraud others; and if any transaction called in question is equally capable of two constructions—one that is fair and honest, and the other that is dishonest, there the law is, that the transaction questioned is presumed to be honest and fair."

Let it be remembered that the judgment note on which Geneser, on June 15th, obtained his judgment by confession, had been executed and delivered on May 11th, thirty-five days before; that it was, in effect, a renewal of a former judgment note for $1,300, which had been executed and delivered in May, 1888, more than a year before; that the note of May, 1888, was likewise a renewal of a judgment note for $1,200, which Geneser held since May, 1887. except that the accruing interest and small additional advances increased the amount of the notes.

To this state of facts is directly applicable the language of our Supreme Court in Field v. Geohegan, 125 Ill. 68, where they say (p. 70):

" The notes and warrants of attorney, authorizing confession of judgments, were executed and delivered more than thirty days before the assignment was executed, and at the time the notes and warrants of attorney were executed, W. S. Geohegan & Co., who executed them, had no thought of making an assignment for the benefit of creditors.   *   *   * How can they be held to be a part of the assignment when executed more than thirty days before the assignment, and when the assignment was not within the contemplation of the parties ?

" But it is said, the exercise of the authority to confess the judgment was delayed until the creditors holding the warrants of attorney became fully advised of the debtor's intention to make an assignment, and thus the use of the warrants of attorney was a fraud upon the assignment law. It is true that judgments were not entered on the warrants of attorney until January 8, 1886—the same day the assignment was made—and that executions were only issued and delivered to the sheriff a short time before the assignment was executed and filed for record. But the debtors had nothing to do with the entry of the judgments. They did not dictate or determine the time when the judgments should be entered. After the warrants of attorney were executed, the creditors holding them as security for their debts, and they alone, had the right to determine when judgments should be confessed, and the fact that they delayed until they saw there was danger of losing their debts unless judgments should be entered before the debtors made an assignment, does not militate against their acts. A creditor always has the right to take every precaution to save or secure his debt, and the fact that he delays until the debtor may be on the eve of bankruptcy, is no argument against the good faith of his acts. Had the warrants of attorney, under which the defendants in error obtained priority, been executed after the debtors contemplated an assignment, and on the eve of an assignment, then they might be regarded as a part of the assignment, and obnoxious to the statute. But such was not the case."

It will be observed that in Field v. Geohegan, judgment was entered on the same day on which the assignment was made. In the case at bar the assignment was made two days after the entry of the Geneser judgment, and years after the execution of the first judgment note.

But even if Mathews had, prior to the entry of Geneser's judgment, formed his intention to make an assignment, and even if Geneser had been aware of such intention (both which elements are disproved by the evidence), still, under the authority of Field v. Geohegan, this would not militate against Geneser's priority, unless the debtor dictated or deter-

mined the time when judgments should be entered. There is no such proof in the record; on the contrary, both Mathews and Geneser swear that the latter caused his judgment to be entered without the advice, suggestion or even knowledge of Mathews.

Our case, therefore, falls directly within the principle announced in Field v. Geohegan, a principle which was strongly reasserted in the still more recent case of Home Nat. Bank v. Sanchez, 131 Ill. 330. In that case, the holder of a judgment note demanded payment, and was told by the debtor that he should have to make an assignment. Judgment was then entered on the note, and immediately thereafter the debtor assigned. Still, as the judgment was not shown to have been entered at the debtor's request, nor that the assignment was delayed for the benefit of the creditor, the judgment was held not to be preferential or obnoxious to the assignment law.

Messrs. CRATTY BROS. & ASHCRAFT and CASSIUS C. CLARK, for appellees.

If Geneser obtained his judgment at a time and with a view of defrauding Telgman out of the amount of his verdict against Mathews, such judgment would be void as to Telgman. A creditor can not even take property from his debtor in payment of his debt, if it is done with the intent to defraud any other person. The fourth section of the statute of frauds is as follows: "Every gift, grant, conveyance, assignment or transfer of, or charge upon, any estate, real or personal, * * * made with the intent to disturb, delay, hinder or defraud creditors or other persons, and every bond or other evidence of debt given, suit commenced, decree or judgment suffered with like intent, shall be void as against such creditors, purchasers and other persons."

"A conveyance made to one who is a creditor of the vendor, if made under circumstances of suspicion, and tainted with fraud in law, will be set aside." Merry v. Bostwick et al., 13 Ill. 399.

"If a conveyance of property is made with a fraudulent

intent and object, it is not purged of the fraud because there may also have been some other purpose in view, such as a discharge of a debt due the grantee." Hanson v. Dennison, 7 Ill. App. 73.  See, also, Nelson v. Smith, 28 Ill. 495.

We say that Geneser's judgment, having been taken with the view of defrauding Mathews, is void, independent of the insolvent debtor act, and independent of the question as to whether Mathews ever contemplated making an assignment. His threat to Ashcraft, that Telgman would get nothing if he didn't accept the offer then made to Ashcraft, followed by the taking of judgment on the Geneser judgment note in two days after this threat, and followed by a sale of the entire stock of Mathews on this judgment, leaving nothing for Telgman, was sufficient for the court to base its decree that the confession of judgment was fraudulent as to Telgman. We do not mean to say that a debtor may not sell his property to his creditor for the purpose of paying a debt due from him, even though the effect of such sale will be to deprive creditors of making their claims against such debtor, if such sale or transfer be made in good faith; but what we do contend for is, that if a sale of property is made, or a confession of judgment taken, with the intent of defrauding another creditor, such sale or such judgment is void, even though the sale was to pay an honest debt, or such judgment was obtained upon an honest indebtedness, and there is no conflict of authorities upon that proposition.  We have no fault to find with the authorities referred to in appellant's brief; these questions as to what constitutes a preference within the meaning of the assignment law are the recent utterances of our Supreme Court, but they are not parallel cases with the one at bar.

In appellant's answer he alleges that he had no knowledge of the insolvency of Mathews at the time he took his judgment, but in his brief his counsel say that he was well aware of the condition of Mathews and of his embarrassed circumstances.  We think the brief states correctly that Geneser was well aware of Mathews' financial condition. We have no doubt he knew for several days before the

judgment was taken, that Mathews was distributing his assets among his creditors; this was noticed by his neighbors, and Geneser unquestionably knew it. If Mathews, in the language of our Supreme Court, " had entered upon a course of conduct having for its object the disposition of all his estate for the benefit of his creditors, and, as part of the plan by which to effect that object, executed a general assignment, the distribution must be to his creditors in proportion to the amounts of their respective claims. If he takes steps whereby to give one creditor preference over another, his action will be fraudulent and void." Hanford Oil Co. v. First Nat. Bank, 126 Ill. 584.

WATERMAN, J. On the 15th of June, 1889, appellant, Geneser, entered against Gustav E. Mathews a judgment by confession for $1,563.12, and upon the same day one Frederick Aye had judgment by confession entered against said Mathews for $199.55; executions were issued at once upon these judgments, and the stock in trade of said Mathews seized thereon.

On the 17th of June, Mathews made a general assignment to Charles W. Peters.

In the month of June, during which those things were done, appellees, Carl and Elsie Telgman, had pending in the Circuit Court of Cook County a suit against Mathews, upon which, on the 13th of June, they had obtained a verdict for $757.57, upon which, on the 17th of June, judgment was rendered.

On the 19th of June the Telgmans filed their bill, alleging, *inter alia*, that the judgments in favor of Geneser and Aye were entered by arrangement with Mathews in contemplation of his assignment, and were really a part thereof; also that they were without consideration, and fraudulent as to complainants, and asking that they be set aside.

The court found that the Geneser judgment was entered in pursuance of an arrangement between Mathews and Geneser that it should be done, and that execution should be at once levied thereon, and Mathews' goods taken thereunder,

Geneser v. Telgman.

after which he should make the assignment he did.    The court also found that Aye obtained his judgment note with knowledge that Mathews was insolvent, and intended to cease business and to make a voluntary assignment under the statute; and that both judgments were part and parcel of the assignment made by Mathews; that Peters, as assignee, refused to take any steps to set aside said judgments; they were therefore decreed to be part and parcel of the voluntary assignment of Mathews, and preferential and void as against complainants and the other creditors of Mathews.    From this decree Geneser appeals.

Upon the hearing it appeared that Mathews had been for some years a tinsmith, doing a small business on Milwaukee Ave., in the city of Chicago.    Being called by the complainants, he testified that when he started in business Geneser loaned him from March till June, 1879, small amounts, aggregating $500; that at various times thereafter he let him have other amounts, and so the matter ran on until in May, 1889, he owed him $1,391; Geneser then gave him $109, and he gave him the judgment note for $1,500; that Geneser and Aye were witnesses for him, Mathews, in the suit with the Telgmans; that Geneser came to him the day the case was tried, and asked him for money, and he had none to give him.    That he, Mathews, was down in attendance upon the Telgman case about four weeks, and thinks Geneser was in court when the verdict was rendered.

Upon cross-examination he testified that he did not know that Geneser was going to enter judgment against him; that on Saturday, the 15th of June, he was up to Geneser's house for money; that the following Sunday was the first time he thought about an assignment; that this was then suggested to him by some one whom he met in a beer saloon, and told that he was in trouble, and Mr. Peters was then recommended to him to make out an assignment for him; that he did not know what an assignment was until Mr. Hohn told him.

Geneser testified that the judgment note was actually made May 11th, and was dated May 1st, because it took the place of one that fell due upon the first.    That before the judgment

was entered, he had not had any talk with anybody about an assignment, or any talk about an arrangement of Mathews' affairs; nor did he in any way let Mathews know that he was going to enter judgment against him.   There was testimony that the day prior to the rendering of judgment in the Telgman suit, Geneser and Mr. Jones called upon one of Telgman's attorneys, and asked what he, Ashcraft, would take to settle the Telgman judgment.   Ashcraft declined to throw off $125 from the verdict, and one of them asked if it would not be better to do that than to get nothing.

Ashcraft said, paying cash for everything as Telgman did, and worth so much money, it was unreasonable to ask a discount, or to intimate that he was unable to pay the claim.

The only question in this case is:   Did Geneser cause his judgment to be entered, in pursuance of an arrangement that thereafter Mathews was to make an assignment, or under such circumstances as to make it a fraudulent preference as an attempted evasion of the law as to assignments, or was it entered for the purpose of enabling Mathews to hinder, delay or defraud his creditors?

It is quite true that the evidence to sustain these propositions need not be direct; such conclusion may be arrived at by inference merely, and fraud may be found to exist against the positive testimony of those who have, and who alone have, positive knowledge of what was done; but not only must there be some evidence of fraudulent practice by the party to be charged therewith, but the fraud being charged, the evidence to sustain the allegation must preponderate.   The inference drawn must be legitimate.   Chicago Stamping Co. v. Hanchett, 25 Ill. App. 198–204; Schroeder v. Walsh, 120 Ill. 403; Mey v. Gulliman, 105 Ill. 272–285.

What evidence is there in this case that Geneser procured his note or entered his judgment to help Mathews about anything, or in pursuance of an arrangement with Mathews as to an assignment, or anything else?

That the judgment note was written out by one Wangreiski, and signed by Mathews and his wife on the 11th of May, seems to be indisputable; that this was but a renewal of another note

Geneser v. Telgman.

of a like character, can hardly be questioned. There is no evidence whatever that on May 11th, when this note was given, Mathews contemplated making an assignment, and the rule announced in Field v. Geohegan, 125 Ill. 68–71, that in such case, where the debtor had nothing to do with the entry of the judgment, it will not be held invalid, seems applicable here.

Where the creditor has in his possession valid judgment notes, made before the debtor contemplated making an assignment, if judgment is entered thereon and priority thereby obtained without unlawful collusion with the debtor, such judgment will not be set aside. Home Nat. Bank v. Sanchez, 131 Ill. 330; Hier v. Kaufman, 25 N. E. Rep. 517.

What evidence is there that the entry of judgment by Geneser was at the procuration of, or by collusion with Mathews?

So soon as the verdict in the Telgman case had been rendered, every principle of self-interest prompted Geneser to enter judgment, and there is no evidence that he did this by reason of any arrangement or collusion with Mathews; on the contrary, the testimony that Mathews had no notice of Geneser's intention to do so, is uncontradicted.

Holding this note given for borrowed money for an amount, it would seem, equal, at least, to all that could be realized on Mathews' stock at a forced sale, having no other security, it could hardly be expected of him, that when he knew that the Telgmans had recovered a verdict against Mathews for $757.57, and in all probability would within a brief time have a judgment thereon, he would, under such circumstances, before availing himself of his security, wait to let Mathews' stock be carried off under an execution issued upon Telgman's judgment.

Suppose Geneser, instead of holding this judgment note for his own benefit, had held it as trustee, guardian of some minor, or administrator of an estate, and, familiar with Mathews' condition, as he was, and knowing of the rendition of the verdict in favor of the Telgmans, as he did, he had folded his hands and let the Telgman execution be levied ere he moved. Would he not have justly been charged with gross neglect of

duty? Can the diligence he would have been bound to use for another, be esteemed a badge of fraud because exercised in his own behalf?

It is immaterial what Mathews may have thought or intended on the 13th, 14th, 15th, 16th or 17th of June, unless Geneser was in some way a party to the scheme, if any there was, of Mathews, to hinder his creditors, or the entry of judgment and making of the assignment were, as to one or both, a concerted arrangement.

As a matter of fact the making of the assignment by Mathews in no way aided Geneser, nor did the entry of the judgment by Geneser assist Mathews. Geneser's judgment was entered in the Superior Court June 15th; execution was at once issued and levy made. The complainants obtained their judgment in the Circuit Court on the 17th. Had Mathews not made an assignment, Geneser's execution would have had precedence over that of Telgman's. So far as Geneser was concerned, the only effect of the assignment was to increase the grounds upon which an attempt to overthrow his judgment could be made. That Geneser may have been willing to have still further assisted Mathews, by buying or paying, if he could at a discount, the Telgman claim, does not tend to show that he entered his judgment in pursuance of an arrangement for Mathews to make an assignment. Nor does it appear that complainants have actually been hindered or delayed in the collection of their judgment by the assignment. It is admitted that the entire stock of Mathews did not sell for enough to satisfy the executions issued upon the Geneser and Aye judgments.

It therefore appears that had the assignment never been made the Geneser and Aye executions would have swallowed all seized thereon, and left nothing for the Telgman execution. It what manner, therefore, have complainants lost anything by virtue of the Geneser and Aye judgments? It is insisted that just before this judgment was entered Mathews was making payments to favored creditors, and that Geneser knew it. Even if this were the case, would Geneser thereby have been deprived of his right to enter judgment? Is a

creditor's right to enforce his security taken away because he sees the debtor disposing of his effects to favorites?

The fact that a creditor knows that his debtor contemplates making an assignment, will not render invalid the judgment he, under such circumstances, causes to be entered. Home Nat. Bank v. Sanchez, *supra.*

We are of the opinion that this judgment note was *bona fide* taken in the usual course of business, when no assignment was contemplated, and that judgment thereon was entered without any collusion or arrangement with Mathews, in such diligent protection of his own interests as its holder, Geneser, had a right to insist upon.

The decree in this case is therefore reversed and the cause remanded to the Superior Court, with directions to dismiss the bill.

*Reversed and remanded with directions.*