## Heinrich W. Grafe et al. v. The Peter Schoenhofen Brewing Co.

1. PREFERENCES—*By Superior Diligence.*—The law gives the creditor the advantage he may secure by his superior diligence, where he is guilty of no fraud or of unlawful confederation or collusion to evade the provisions of the statute.

2. SAME—*Under the Assignment Act.*—The statute is not intended to regulate the act of the creditor. He may, notwithstanding the statute, if he does not know that his debtor contemplates making an assignment, take a mortgage, or other security for his debt, in good faith and enforce the same. And if he obtains a preference over the assignment by his own diligence, and without collusion with the debtor, the subsequent assignment will not affect his security.

3. MORTGAGES—*By Insolvents Prior to Assignments.*—The question as to the operation of a chattel mortgage upon the stock in trade assigned, executed by the assignor prior to the assignment, can not be raised by the assignee or by simple contract creditors.

4. FRAUDULENT CONVEYANCES—*Who May Impeach for Fraud.*— Only such creditors as are armed with an execution, writ of attachment or other process of court, are regarded as creditors in the sense that they are authorized to impeach a conveyance or transfer of property by their debtors, for fraud, or question the validity of an equitable lien on personal property which is good as against such debtors themselves, and their heirs, executors, administrators and voluntary assignees.

**Voluntary Assignments.**—Trial in the County Court of Cook County; the Hon. J. H. BATTEN, Judge, presiding. Order that a mortgage be a first lien, etc. Appeal by creditors. Heard in this court at the March term, 1898. Affirmed. Opinion filed October 27, 1898.

On November 16, 1897, Max Romer, who was insolvent,

determined to make a general assignment for the benefit of his creditors.   Two days prior to that date he had consulted his attorney in relation thereto, and on that date the papers for the assignment were prepared by his attorney.   Whether this assignment was executed by Romer on the 16th or some time later, is not certain from the evidence, but it was not delivered to the assignee until the 25th of November, 1897, upon which date the assignee took possession.   Upon November 22, 1897, Romer, who was then indebted to appellee to the amount of $2,000, obtained a further loan of $500 of appellee, and then executed a chattel mortgage upon the fixtures, stock in trade, etc., of his business to secure the entire amount of his indebtedness, viz., $2,500.   The mortgage was properly acknowledged, delivered and recorded, upon that date.   Several weeks prior to the time of advancing the $500 and taking the chattel mortgage (and hence prior to November 14, 1897), the attorney of appellee had upon different occasions had interviews with Romer in relation to the making of the loan and the giving of the mortgage.   The giving of the mortgage was insisted upon by the attorney of appellee and acceded to by Romer with reluctance. · It is uncontroverted that appellee had no knowledge of the insolvency of Romer or of his intention to make a general assignment, when the mortgage was taken.   Under the provisions of the chattel mortgage Romer, the mortgagor, remained in possession.   It was also provided that if mortgagee shall feel insecure or unsafe, or fear diminution, removal or waste, or if mortgagor shall assign, etc., the indebtedness secured by the mortgage shall become at once due, and mortgagee shall have right to take immediate possession, etc.   Upon the administration of the insolvent estate in the County Court appellee filed a petition, praying that mortgage be declared a valid first lien, and that property conveyed by mortgage be surrendered to appellee.   The County Court granted the relief prayed.   From this decision the appeal here is prosecuted.

PLUM & CLOYES and O. D. SWEARINGEN, attorneys for appellants.

Lackner, Butz & Miller, attorneys for appellee.

Mr. Justice Sears delivered the opinion of the court.

But two questions are presented upon this appeal:

1st. In view of the intended general assignment by Romer, was the giving of the chattel mortgage in question such a preference as is prohibited by the law?

2d. The mortgage being in part upon stock in trade, and the mortgagee not having reduced to possession before the possession of the assignee, was the mortgage inoperative as to such stock in trade?

It is contended by appellants that the mortgage having been made by Romer after he had determined upon making a general assignment for the benefit of all his creditors, the mortgage was therefore an attempt to give a preference, which is prohibited. We think that this contention can not be maintained. We regard the controlling fact to be the lack of any knowledge on the part of appellee, or its attorneys, of the intended assignment, when the mortgage was insisted upon by appellee and given by Romer to secure a *bona fide* indebtedness. Preston v. Spalding, 120 Ill. 208; Home National Bank v. Sanchez, 131 Ill. 330; Schwartz v. Messinger, 167 Ill. 474.

In Home Nat'l Bank v. Sanchez, *supra*, the court say: "It is to be observed, as distinctly held in the case first cited, Preston v. Spalding, *supra*, the statute is not intended to regulate the act of the creditor. He may, notwithstanding the statute, if he does not know that his debtor contemplates making an assignment, take a mortgage, power of attorney to confess judgments, or other security for his debt in good faith, and enforce the same. And if he procures a preference over the assignment by his own diligence and without collusion with the debtor, the subsequent assignment will not affect his security. The law gives the creditor the advantage he may secure by his superior diligence, where he is guilty of no fraud or of unlawful confederation or collusion to evade the provisions of the statute." The doctrine is reaffirmed in Schwartz v. Messinger, *supra*.

In the case under consideration the appellee had no knowledge whatever of the intended assignment. Nor does this case fall within the class of cases where, without any knowledge of the creditor, the debtor about to make general assignment, of his own volition gives such creditor a preference, unsolicited and unlawful, because it is a part of the act of assigning the insolvent's estate. Here the giving of the mortgage was not done voluntarily by Romer, but only as the result of the insistence of appellee. H. & L. Bank v. Rehm, 126 Ill. 461, relied upon by appellants, was a case where the creditor at the time of taking the preference was chargeable with knowledge of the debtor's insolvency and intended assignment.

The second question is as to the operation of the mortgage upon the stock in trade thereby conveyed, which remained in the possession of the mortgagee until reduced to the possession of the assignee in the general assignment. If the question were raised as between appellee and a judgment or attaching creditor who had reached this property, viz., the stock in trade, before the mortgagee had taken possession, a different conclusion might result. But here the question must be raised, if at all, by the assignee, or by appellants, who are simple contract creditors. The assignee can not be heard to say that the mortgage does not operate to convey to appellee the stock in trade. Bouton v. Dement 125 Ill. 142; Union Trust Co. v. Trumbull, 137 Ill. 146.

Neither can appellants, who are simple contract creditors, dispute the right of appellee to this property under the mortgage. Union Trust Co. v. Trumbull, *supra*, and cases therein cited.

In the case cited the court say: "But by 'creditors' is meant not general creditors or creditors at large; and only such creditors as are armed with an execution or writ of attachment or other process of court are regarded as 'creditors,' in the sense that they are authorized to impeach a conveyance or transfer of property by their debtors for fraud, or question the validity of an equitable lien on personal property that is good as against such debtors them-

selves, and their heirs, executors, administrators and voluntary assignees."

The mortgage here was valid, as well upon the stock in trade as upon the fixtures, between appellee and Romer, and hence was valid too, as against the voluntary assignees of Romer and appellants, his simple contract creditors.

The decree is affirmed.