# THE ILLINOIS PAPER COMPANY

## *v.*

# THE NORTHWESTERN NATIONAL BANK.

*Filed at Ottawa March 31, 1894.*

1. INSOLVENT DEBTORS—*assignment for the benefit of creditors—unlawful preference.* If an insolvent debtor, in contemplation of making a general assignment for the benefit of his creditors, under the statute, pays a debt not due, and the creditor accepts payment in cash without notice of the debtor's insolvency or contemplated assignment, under the statute, the payment will not be an unlawful preference, and will be sustained.

2. A debtor contemplating an assignment may not dispose of his estate to favored creditors by creating liens or incumbrances thereon, and thereby indirectly accomplish the preferences prohibited by the statute. But this court has never held that while the debtor retains the *jus disponendi* he may not pay, in money, such of his *bona fide* indebtedness as he may desire, if the payment is received by the creditor in good faith, without knowledge of the purpose of the debtor. If the payment is made by collusion between the debtor and creditor, for the purpose of defeating the equitable distribution of the debtor's estate, a different rule might prevail.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Circuit Court of Cook county; the Hon. L. C. COLLINS, Judge, presiding.

The following statement of the case will be sufficient:

"Appellant filed its bill against appellee, setting forth that it is a judgment creditor of one Charles N. Trivess to the amount of over $2000; that execution has been issued upon the said judgment, and that said Trivess has no property or assets upon which the said execution can be levied; that the said Trivess, on the 17th day of October, 1890, made a general assignment for the benefit of his creditors, under the statute of this State regulating such assignments; that while the said indebtedness to appellant was in full force, and while said Trivess was insolvent, and after he had resolved, con-

cluded and determined to make the said general assignment, he paid to appellee the sum of $4750 in payment of his note then held by appellee, but which note had not then matured or become payable, and which would not mature or become due or payable until the 30th day of October, 1890, and by said payment said Trivess paid his indebtedness to appellee in full, and thereby designed and intended to make and give to appellee, in fraud of the provision of the statute, a preference ; that by making such payment the amount thereof was fraudulently withheld from coming to the hands of the assignee for distribution among the general creditors of said Trivess, as the law provides; that the assets and estate of said Trivess that have come into possession of the assignee, or within the jurisdiction of the county court of Cook county, under the said assignment, are wholly inadequate and insufficient to pay the *bona fide* indebtedness of said Trivess in full, and are only sufficient to pay a small percentage of the same, and that by the said unlawful preference given to appellee, appellant, as a *bona fide* creditor of Trivess, was greatly defrauded. The bill further states that the making of the assignment and the payment to appellee were parts of one transaction, and constituted an assignment, with a preference to appellee, of the said sum of $4750, in violation of the prohibition of the statute aforesaid, and that the preference is void, and prays that the payment to appellee be decreed a fraudulent preference, and void, and that the same be subjected to the payment of the said indebtedness to appellant; that appellee be decreed to pay to appellant so much or such part of said indebtedness as it shall be entitled to after applying such percentage or dividend as the assets of said Trivess, under the jurisdiction of the county court in the matter of the assignment, may produce, and for other and further relief. Appellee filed a general demurrer to the bill, which demurrer the circuit court sustained, and dismissed the bill for want of equity."

On appeal to the Appellate Court the decree of the court below was affirmed, and appellant prosecutes this further appeal.

Mr. MATTHEW P. BRADY, for the appellant:

A question of law, only, is involved in this case. The facts stated in the bill of complaint are all admitted by appellee's demurrer. 1 Daniell's Ch. 545; *Gage* v. *Bailey,* 115 Ill. 646.

The point to be determined, then, is, do the facts show an unlawful preference to appellee? It is settled beyond controversy in this State, that after a debtor has made up his mind to make an assignment of his property for the benefit of creditors, all conveyances, transfers and other dispositions of his property or assets, made in view of his intended general assignment, whereby any preference is given, will, in a court of equity, be declared void, and set aside, the same as though incorporated in the deed of assignment itself. *Preston* v. *Spaulding,* 120 Ill. 209; *Bank* v. *Rehm,* 126 id. 461; *Oil Co.* v. *Bank,* id. 584; *White* v. *Cotzhausen,* 129 U. S. 329.

Should the right of preference be challenged, I submit the following authorities as sustaining appellant's course: *Ide* v. *Sayer,* 129 Ill. 230; *Preston* v. *Spaulding,* 120 id. 208; *White* v. *Cotzhausen,* 129 U. S. 329; *Boulton* v. *Dement,* 123 Ill. 143; *Ide* v. *Sayer,* 30 Bradw. 210.

Mr. CHARLES M. STURGES, for the appellee:

The bill does not charge the bank with notice, collusion, misconduct or fraud. Fraud, if relied on, must be averred, and the bill must also set out the facts which justify the conclusion of fraud drawn by the pleader. *Smith* v. *Brittenham,* 98 Ill. 199; *O'Neil* v. *Boone,* 82 id. 598; *Fish* v. *Cleland,* 33 id. 243; *Newell* v. *Bureau County,* 37 id. 253.

As to the construction of the statute, see *Bank* v. *Rehm,* 126 Ill. 461; *Farwell* v. *Nilssen,* 133 id. 145; *Bank* v. *Sanchez,*

131 id. 337; *Preston* v. *Spaulding*, 120 id. 208; *Oil Co.* v. *Bank*, 126 id. 584; *White* v. *Cotzhausen*, 129 U. S. 329.

Both parties must participate in the fraudulent intent, to avoid the contract. *Hatch* v. *Johnson*, 74 Ill. 414; *Gridley* v. *Bingham*, 51 id. 153; *Brown* v. *Riley*, 22 id. 45; *Herkelrath* v. *Stookey*, 63 id. 486.

Mr. JUSTICE SHOPE delivered the opinion of the Court:

The question presented by the record is, whether, where a debtor who has in contemplation the making of a general assignment for the benefit of his creditors, under the statute, and which is unknown to the creditor, pays indebtedness not due, in money, such payment will be an unlawful preference, within the meaning of the General Assignment act, prohibiting preferences in assignments.

It is not alleged in the bill that the creditor knew of the debtor's insolvency, or that he knew the debtor contemplated making a general assignment, or that the payment was the result of any collusion or contrivance between the debtor and creditor to effect a distribution of the debtor's estate to the prejudice of the general creditors, or in fraud of the Voluntary Assignment act. It is, however, alleged, that the payment was of a debt not due, and it is insisted that the creditor was thereby put upon inquiry as to the debtor's insolvency and intended assignment for the benefit of creditors. There is nothing so unusual or extraordinary in the desire of a debtor to pay his interest-bearing debt, as this was alleged to have been, before it is due, as to excite suspicion that the debtor has some ulterior purpose in making the same. Men engaged in business, exercising prudence and care, frequently meet bills before due to avail of discounts. And so, it is not uncommon for a debtor having the means, to be desirous of paying his interest-bearing indebtedness, and for the creditor, where an investment is not intended upon sufficient security,

to receive payment, and no presumption can arise, from the mere fact of payment, of the want of good faith either in the debtor or creditor, because the debt happens, by its terms, not to be then presently payable. Were the rule otherwise, it would be necessary, in sales of goods or other property on time, for creditors to be on the alert, upon the incoming of remittances from debtor patrons, to ascertain not only the financial condition of the debtor, but whether he contemplated making an assignment. It is a matter of common knowledge that goods are purchased largely on thirty and sixty days, and perhaps longer periods of time, with an offer of discount if paid at an earlier day. To hold that, upon receipt by the seller of cash remittances before bills matured, it was necessary that he should ascertain whether the debtor intended presently to make an assignment, would interrupt the regular course of business and lead to disastrous results. The case made by the bill, therefore, is, that the debtor, having determined to make an assignment, went to his creditor, paid his indebtedness not yet due, in cash, and the creditor, without notice of the debtor's insolvency or of his intention to make a general assignment for the benefit of creditors, received the payment and surrendered the evidence of indebtedness.

It is insisted that under the authority of *Preston* v. *Spaulding,* 120 Ill. 209, *Hide and Leather Nat. Bank* v. *Rehm,* 126 id. 46, and *Hanford Oil Co.* v. *First Nat. Bank,* id. 584, the payment by the debtor after having determined to make an assignment was a fraudulent preference, within the meaning of the act, and that when the assignment was subsequently executed, the transaction is to be treated as part of it, and the payment regarded as a fraudulent preference, and therefore the creditor should be required to pay the money over to the assignee, to be distributed under the order of the court. A careful examination of the cases cited, in the light of the facts therein, will demonstrate that the doctrine there announced can have no application to the case at bar. In each

of those cases the claims of the preferred creditors remained unextinguished, and additional security or lien was created over the general creditors. Here there was an absolute payment in money and an extinguishment of the debt. Appellee ceased to be a creditor of the insolvent. The complete title and possession of the money at once passed to the creditor, without fraud on his part or collusion with the debtor. Where there is preference given, within the meaning of the statute, the debt remains intact, with some additional lien upon the property of the debtor not common to the general creditors. The statute provides that "every provision in any assignment hereafter made, * * * providing for the payment of one debt or liability in preference to another, shall be void," etc. In construing this statute so as to effectuate its equitable purpose in requiring *pro rata* distribution of the insolvent's estate among his creditors, it was held in the cases cited, that where the debtor, on the eve of making a general assignment, places one or more of his creditors in a situation or condition especially advantageous, by creating liens upon his property, giving collateral security or confessing judgment, and the like, the transaction, being part of the scheme entered upon by the debtor to dispose of his property for the benefit of his creditors, would be held to be a part of the general assignment, and an unlawful preference.

We have given the provisions of the Assignment act a liberal construction, for the purpose of carrying into effect the evident intention of the legislature to effectuate equal distribution of the insolvent's property to and among his creditors, and that a debtor contemplating an assignment may not dispose of his estate to favored creditors by creating liens or incumbrances thereon, and thereby indirectly accomplish the preferences prohibited by the statute; but it has never been held, that while the debtor retains the *jus disponendi* of his property, he may not pay, in money, such of his *bona fide* indebtedness as he may desire, if the payment is received by

the creditor in good faith, without knowledge of the purpose of the debtor. While a transfer of property, which necessarily has only a relative value, or the creation of liens or incumbrances, might be regarded as security for the debt, or a provision in the assignment for a preference, it is impossible to conceive how a payment in money, and extinguishment of the debt thereby, can be regarded as a provision creating or providing for an unlawful preference. An assignment presupposes a trust for the benefit of creditors, either partial or general. In the payment of the money in extinguishment of the debt no trust relation is or can be created. The money passes to the creditor absolutely. It is the measure and standard of value, and is again carried into the ceaseless current of mercantile transactions, and its identity lost. Undoubtedly, if the payment was made by collusion between the debtor and creditor, for the purpose of defeating the equitable distribution of the debtor's estate, as contemplated by the act, a different rule might prevail. But that question is not before us on this record, and no necessity exists for its determination. Here no such collusion is shown, or knowledge on the part of the creditor of the contemplated assignment of the debtor, and we are of opinion that a payment to the creditor of his *bona fide* indebtedness, under the circumstances shown, did not create a preference, within the meaning of the statute. *Home Nat. Bank* v. *Sanchez*, 131 Ill. 330; *Lamson* v. *Arnold*, 19 Iowa, 480; *Van Patten* v. *Burr*, 52 id. 518; *Field* v. *Geohegan*, 125 Ill. 68.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*