HARRIS GETTINGER V. NATIONAL BANK OF COMMERCE ET AL.

1. TRANSACTION FRAUDULENT AND VOID UNDER SEC. 6343, REV. STAT.

Where an insolvent debtor mortgages his whole property for its full value to secure a loan from a third person, and upon the same day turns over to certain creditors the entire proceeds thereof, leaving more than half of his indebtedness unpaid, the effect of the transaction is to turn over to these creditors his entire property, and he will be considered as having done so in contemplation of insolvency and with intent to prefer such creditors, within the meaning of Sec. 6343, Rev. Stat., as amended 93 O. L. 290, making such transactions void.

2. SECTION 6343, REV. STAT., INCLUDES PAYMENT OF MONEY.

Section 6343, Rev. Stat., as amended 93 O. L. 290, providing that every act or device done in contemplation of insolvency or with intent to prefer creditors, such as sales, conveyances, transfers, etc., shall be void is sufficiently broad to include "payment of money," made under the above circumstances, although the term "payment" is not specified in its inhibitions.

3. SECTION 6343, REV. STAT.—EXCEPTIONS.

Section 6343, Rev Stat., providing that sales, conveyances, transfers, mortgages or assignments made in contemplation of insolvency shall inure to the benefit of all creditors, exempts mortgages given to secure a new loan and not a pre-existing debt if filed for record within three days.

HEARD ON ERROR.

Chittenden & Chittenden, for plaintiff in error.

Harvey Scribner and Kohn & Northup, for defendants in error.

HULL, J.

This action was brought by the plaintiff below, who is also plaintiff in error, under Sec. 6343, Rev. Stat., to set aside certain payments and transfers of moneys which it is claimed were made by the defendant, Grant Benson, on January 14, 1901, for the reason, as alleged, that Benson at that time was insolvent, and that he made the payments in contemplation of insolvency, and with the intent and design of preferring certain creditors. General demurrers were filed by the defendants in the court of common pleas to the amended petition, and those demurrers were sustained. Plaintiff not desiring to plead further, the petition and the action were dismissed at the costs of the plaintiff, and judgment entered against him in favor of the defendants. It is to reverse this judgment that the petition in error was filed in this court.

The contention of the defendants in error is, that the transaction set forth in the amended petition, is not within the purview of Sec. 6343, Rev. Stat., as amended April 26, 1898, 93 O. L. 290, 291. The claim of the plaintiff is that the facts set forth in the petition make a cause

of action under this section, as amended, and if those facts are true, as admitted on demurrer, that he is entitled to have the payments and transfers of moneys mentioned in the petition set aside, a trustee appointed, and the moneys collected by the trustee, and administered and distributed for the benefit of all the creditors. The amended petition is as follows:

" Plaintiff states that the defendant, The National Bank of Commerce, is a banking corporation organized under the laws of the United States, and doing and carrying on a general banking business at No. 324 Madison street, in the city of Toledo, Lucas county, Ohio.

" Plaintiff further states that on January 14, 1901, he recovered a judgment against the defendant, Grant Benson, in the city and justice courts of the city of Toledo and Port Lawrence township, Lucas county, Ohio, in the sum of $123.50 and costs. That thereafter, to-wit, on January 17, 1901, transcript of said judgment was filed with the clerk of the court of common pleas of Lucas county, Ohio, and execution was issued thereon to the sheriff of Lucas county, Ohio. That said execution has been returned by said sheriff wholly unsatisfied.

" Plaintiff further states that on or about January 8, 1901, the defendant, Grant Benson, was indebted to his co-defendants herein, and other creditors, in a sum aggregating more than $27,000. That on said date the defendant, Grant Benson, had no property of any name or nature subject to the payment of said indebtedness other than a stock of merchandise located at No. 310 Summit street in the city of Toledo, Lucas county, Ohio, of the value of not more than $15,000. That on or about said January 8, 1901, said defendant, Grant Benson, obtained a loan of $12,000, and to secure payment of same executed a chattel mortgage covering said stock of merchandise above referred to. That said stock of merchandise has now been sold, and did not sell for enough to satisfy said mortgage indebtedness, and that said Grant Benson now has no property of any nature to satisfy any portion of his indebtedness.

" Plaintiff further states that on or about January 8, 1901, the defendants, The National Bank of Commerce, Arthur Klauser, Charles B. Darling and Jay Benson, were creditors of the defendant, Grant Benson, and that on or about said January 8, 1901, the said Grant Benson, in contemplation of insolvency, and with the intent and design to prefer said The National Bank of Commerce, Arthur Klauser, Charles B. Darling and Jay Benson, to the exclusion in whole or in part of his other creditors, transferred and paid from said fund realized by execution of said chattel mortgage to said, The National Bank of Commerce, the sum of $5,000 ; to Arthur Klauser the sum of $5,000 ; to Charles B. Darling the sum of $1,500 ; and to Jay Benson the sum of $500. That said pay-

ments so made by the defendant, Grant Benson, to his co-defendants, The National Bank of Commerce, Arthur Klauser, Charles B. Darling and Jay Benson, were made in contemplation of insolvency and with the design to prefer said creditors to the exclusion in whole or in part of the other creditors of the said Grant Benson, and with the further design to hinder and delay his other creditors in the collection of their demands, and to defraud the other creditors of the said Grant Benson.

" Wherefore, your petitioner prays the court that said payments so made by the said Grant Benson to said The National Bank of Commerce, Arthur Klauser, Charles B. Darling and Jay Benson, be declared void as to the creditors of the said Grant Benson, and that said transfers and payments so made be declared to be an assignment of all the property of the said Grant Benson for the benefit of his creditors, and that said payments and transfers so made be declared to inure to the equal benefit of all the creditors of the said Grant Benson, in proportion to the amount of their respective demands. That a trustee may be appointed to recover possession of said property and moneys so transferred and paid, and that the estate of the said Grant Benson be administered for the equal benefit of all of his creditors."

It appears then from the petition that on January 8, 1901, Grant Benson was insolvent; that he had no property subject to the payment of his debts except this stock of goods; that he owed $27,000; that the stock of goods was not worth more than $15,000; that on that day he borrowed $12,000, and to secure the loan made a chattel mortgage; that the merchandise has since been sold, and did not sell for enough to satisfy the mortgage; that on this same day he turned over the proceeds of this loan to the four creditors named, $5,000 to the National Bank of Commerce; $5,000 to Arthur Klauser; $1,500 to Charles B. Darling, and $500 to Jay Benson, leaving nothing for his other creditors, or to satisfy his remaining indebtedness, which, according to the petition, amounted to about $15,000.

The plaintiff in error claims that this transaction is within the terms of Sec. 6343, Rev. Stat. The defendants in error claim that the transaction as set forth amounts to no more than the borrowing of this money upon the chattel mortgage, and with the proceeds of the loan paying these creditors; and it is contended that such payment is not within the provisions of Sec. 6343, Rev. Stat.

The chattel mortgage itself upon which the money was realized is not attacked. The statute provides that a mortgage given to secure a new loan and not to secure a pre-existing debt shall not be affected by the statute, if filed for record within three days.

The amended Sec. 6343, Rev. Stat., is substantially a new statute. The legislature completely remodeled the statute. There were many decisions under the old act which upheld transfers of property by insolvent debtors when made to pay a debt absolutely, or when made to secure a *bona fide* indebtedness. The "diligent creditor" was encouraged to be diligent and to secure his claims from insolvent debtors, and although that resulted in the exclusion of all other creditors, it was sustained under the statute as it then stood. The question, as a matter of common knowledge, was for a long time a subject of discussion in the courts, in the legal bodies and bar associations, and attracted the attention of the legislature, until finally, in 1898, this amended statute was passed. The title of it is, " Sales, conveyances, transfers, mortgages, assignments, etc., in contemplation of insolvency to inure to benefit of all creditors." It provides as follows :

" Every sale, conveyance, transfer, mortgage or assignment, whether made in trust or otherwise, by a debtor or debtors, and every judgment suffered by him or them, and every act or device done or resorted to by him or them, in contemplation of insolvency, or with a design to prefer one or more creditors to the exclusion in whole or in part of others, and every sale, conveyance, transfer, mortgage or assignment made, or judgment suffered by a debtor or debtors, or procured by him or them to be made, in any manner, with intent to hinder, delay or defraud creditors, shall be declared void as to creditors of such · debtor or debtors, at the suit of any creditor or creditors, as hereinafter provided, and shall operate as an assignment and transfer of all the property and effects of such debtor or debtors, and shall inure to the equal benefit of all creditors of such debtor or debtors in proportion to the amount of their respective demands, including those which are unmatured.

" And every such sale, conveyance, transfer, mortgage or assignment made, and every such judgment suffered, and every such act or device done or resorted to, by any debtor or debtors, in the event of a deed of assignment being filed within ninety days after the giving or doing of such thing or act, shall be conclusively deemed and held to be fraudulent, and shall be held to be void as to the assignee of such debtor or debtors, whereupon proof shown, such debtor or debtors was or were actually insolvent at the time of the giving or doing of such act or thing, whether he or they had knowledge of such insolvency or not.

" Provided, that nothing in this section contained shall vitiate or affect any mortgage made in good faith to secure any debt or liability created simultaneously with such mortgage, if the same be filed for record in the county wherein the property is situated, or as otherwise provided by law, within three days after its execution, and where upon fore-

closure or taking possession of such property the mortgagee fully accounts for the proceeds of such property."

The following section (6344) provides that any creditor or creditors as to whom any of the acts prohibited in the preceding section are void, may begin action, etc., and provides for the appointment of a trustee, and makes it the duty of the assignee to bring suit for the recovery of all property so mortgaged, transferred, or assigned; and provides that a creditor may bring suit on the failure of the assignee to do so, if an assignee has been appointed.

There is no allegation in this petition that these creditors to whom these payments were made had knowledge of the insolvency of the debtor, Benson, and the transfer, so far as they are concerned, is set forth in the petition as a " payment " to them : it is called a " payment." It is contended that this payment of money to a creditor without knowledge of the insolvency of the debtor is not within this section, and was not intended to be by the legislature. It is argued that it would lead to great confusion and uncertainty in business and mercantile transactions, if the payment of money by a detor to a creditor could be disturbed as is sought to be done in this case. The statutes of some other states are cited and quoted, in which payments of money by insolvents is provided for, by the express use of the word " payment," and the effect of the payment of money by an insolvent to a creditor who has knowledge of his insolvency is provided for in some of those states.

There has been no decision of the Supreme Court construing or interpreting this statute as amended. There has been one decision of the circuit court, a case decided at the May term, 1900, Seneca county, (unreported) Walding, Kinnan & Marvin Co. v. Myers,—the opinion is by Judge Day. This is the only case, so far as we know, where this amended statute has been considered.

The Supreme Court in a case decided in 1889, Rouse v. Bank, 46 Ohio St. 493 [22 N. E. Rep. 293 ; 5 L. R. A. 378; 15 Am. St. Rep. 644], long before this statute was amended, held with reference to corporations, that: "A corporation for profit, organized under the laws of this state, after it has become insolvent, and ceased to prosecute the objects for which it was created, cannot, by giving some of its creditors mortgages on the corporate property to secure antecedent debts without other consideration, create valid preferences in their behalf over the other creditors, or over a general assignment thereafter made for the benefit of creditors."

The holding of that case was that after a corporation became insolvent, and ceased to prosecute the objects for which it was created, it held its property in trust for the benefit of all its creditors, and could

Lucas County.

not prefer one or more creditors to the exclusion of others. This amended statute was a long step in the direction of placing insolvent individuals in the same condition as that in which corporations had been placed by this decision of the Supreme Court. The language of the statute is—

"Every sale, conveyance, transfer, mortgage or assignment whether made in trust or otherwise, by a debtor or debtors, and every judgment suffered by him or them, and every act or device done or resorted to by him or them, in contemplation of insolvency, or with a design to prefer one or more creditors to the exclusion in whole or in part of others, and every sale, conveyance, transfer, mortgage or assignment made, or judgment suffered by a debtor or debtors, or procured by him or them to be made, in any manner, with intent to hinder, delay, or defraud creditors, shall be declared void as to creditors of such debtor or debtors."

The words used at the beginning of the section are: "Every sale, conveyance, transfer, mortgage, or assignment, whether made in trust or otherwise." The word "payment" is not used, but the word "transfer" is used, and the word "sale," and the word "conveyance;" and if money could be the subject of transfer, that might be a broad enough word to cover the transfer or payment of money.

Although the word "payment" is not used, it is not disputed but that the statute would cover a case where it was undertaken to cancel the debt by a transfer of property other than money. A debt may be paid with property as well as with money, and under the old statute, as it stood before the amendment, we often had cases where an insolvent debtor undertook to pay his debt by an absolute transfer of property, and such transactions were upheld by the courts. The definition of "pay," as found in Anderson's Law Dictionary, 759, is, "To discharge an obligation by a performance according to its terms or requirements, whether the obligation be for money, merchandise, or services. To deliver to a creditor the value of a debt in either money or goods to his acceptance, by which the debt is discharged." According to this definition, a delivery to a creditor of goods in payment of a debt, or to cancel a debt, is as much a payment, as to hand over to him money.

The purpose of this statute is plain; and that is, that when a man has become insolvent, unable to pay his debts, that he shall treat all of his creditors alike. The statute was amended to prevent such apparent evils as had grown up under the old statute, which seemed in morals, at least, to be often tantamount to fraud; as where a man went into business, purchased a stock of goods with borrowed money, became insolvent, or was insolvent at the time of the purchase, and turned over

Gettinger v. Bank.

all the goods so purchased with borrowed money to some preferred creditor, leaving out all other creditors, including the very one from whom he had borrowed the money with which to purchase his goods. The purpose of this amendment was to prevent transactions of that kind, and to put the creditors of an insolvent debtor upon an even footing, and to take it out of the power of the insolvent debtor, to put his creditors in any other position than on an equal footing, so far as was practicable by legislation.

The language used by the legislature is broad and sweeping. After the use of the various words referred to, the statute provides, "And every act or device, done or resorted to by him or them in contemplation of insolvency, or with a design to prefer one or more creditors," etc., shall be declared void. It is difficult to see how broader language could be used than such an expression as "every act or device," done in contemplation of insolvency, or with intent to prefer one or more creditors, etc., first reciting the various transactions, such as "sales," "conveyances," and "transfers" that shall be held to be void, and then as if to cover any case that might arise that was not covered by the exact language employed, using the expression just quoted.

The decisions in other states are of but little help to us, as this is a statutory question, and we have not been referred to any statute that contains the same language as ours. An Illinois case has been cited: Illinois Paper Co. v. Bank, 37 N. E. Rep. 66 (149 Ill. 450), but the statute which was passed upon in that decision is very different from ours. It is this:

"Every provision in any assignment hereafter made in this state providing for the payment of one debt or liability in preference to another, shall be void, and all debts and liabilities within the provisions of the assignment shall be paid *pro rata* from the assets thereof. 2 Starr & Curtis' Illinois Statutes, 2190."

It uses no such sweeping language as that in our statute; in fact, it is a very different piece of legislation.

If Mr. Benson had made this mortgage directly to these creditors to secure a pre-existing debt, on January 8, 1901, and in that way had preferred them, it probably would be admitted that it would have been within the statute; but instead of doing this, he made the mortgage to a third person, and on that mortgage raised the $12,000 which he owed these three creditors; and on the same day, perhaps as a part of the same transaction, the money is turned over to these four creditors, thereby turning over to them in fact all the property which he had.

It seems to us that this transaction as set forth in the amended petition is within this section as amended, and that to hold otherwise

would result in the practical nullification of this statute. An insolvent debtor, instead of making his agreement with or giving his security directly to the creditor, might give it to a third person, who would pay the money over directly to certain preferred creditors, and not be within the provisions of the statute. The fact that it is money that he turns over to his creditors does not seem to us to take the case out of the statute. There might be a case, as in the case of a bank, where practically all of the property of the debtor was money. If it be true that money is not within the provisions of this section, then such individual or corporation might transfer all of his or its property directly to the creditor for the purpose of preferring him, and in contemplation of insolvency, and not be within the terms of this section.

The argument that this would lead to uncertainty in business affairs has some force, but that may be said of goods as well as money. When goods are transferred by an insolvent debtor to a creditor, they may be sold and are often sold, and go into the channels of commerce, and are reduced to money; but that does not prevent an assignee or a trustee, if appointed, holding the creditor who receives the goods under such circumstances to an accounting to the other creditors.

We think this transaction, as set forth in the petition, is not only within the spirit of this statute, but within its letter. It was not the payment of a debt in the ordinary course of business, as one going into a store to pay an account. When an insolvent debtor mortgages all the property that he has for its full value, and upon the same day the entire proceeds of the loan are turned over to four creditors, leaving $15,000 of his indebtedness unpaid, it differs from the payment of a store account in the ordinary course of business. The effect of such a transaction is to turn over to these creditors his entire property, not the goods themselves, but the money which he has secured by this loan, in the place of the goods. He was at the time insolvent, and it must be held, under the allegations of the petition, that he did this in contemplation of insolvency and with intent to prefer these creditors. We judge of a man's intent by his acts, by what he does, by the effect of his acts; and the effect of this act was to prefer these creditors, to pay their claims, and to leave the others out. We think that a proper construction of this statute, and an interpretation of it in the spirit with which it was passed, requires such a holding as we make in this case, and that we are but carrying out the purpose of the legislature in holding that such a transaction as this is within the statute and should be declared void. Our opinion is in harmony with the decision of the circuit court of Seneca county to which reference has been made.

For these reasons the judgment of the court of common pleas will be reversed.